**Willie B. VINCENT et al., Plaintiffs,**

v.

**UNITED STATES of America,
Defendant.**

**No. H–73–C–54.**

United States District Court,
E. D. Arkansas, E. D.

Sept. 11, 1974.

McMath, Leatherman & Woods, and Wilson & Hodge, Little Rock, Ark., for plaintiffs.

W. H. Dillahunty, U. S. Atty., Little Rock, Ark., for defendant.

## MEMORANDUM OPINION AND ORDER

OREN HARRIS, District Judge.

The plaintiffs bring this action against the United States of America under the provisions of the Federal Tort Claims Act (28 U.S.C.A. § 2671 et seq.). Jurisdiction is claimed under the provisions of 28 U.S.C.A. § 1346(b). Plaintiffs allege their claims have been presented to the appropriate Federal agency as required and the claims were rejected on November 9, 1973.

The plaintiffs are citizens and residents of Phillips County, Arkansas, and the cause of action upon which the case is based arose in that County.

It is alleged by the plaintiffs that, on or about March 14, 1973, Christopher Smith and Sharon Vincent, minors, were passengers in a car driven by Mary L. Rush, who, at that time, was an employee of the United States Government and she was acting within the course and scope of her employment at the time when the car driven by her collided head-on with a vehicle driven by Ruben Houston, resulting in serious injury to Christopher Smith and Sharon Vincent. Ruben Houston had driven his vehicle for a considerable period of time in the wrong or left lane of the road toward the on-coming vehicle of Mrs. Rush.

Further, the plaintiffs contend that Mrs. Rush was negligent in failing to keep a proper lookout and in failing to take reasonable avoiding action after she saw the on-coming vehicle driven by Ruben Houston. The plaintiffs claim that the negligence of Mrs. Rush was the proximate cause of the collision and such negligence is imputed to the defendant.

The defendant, United States of America, filed a Motion to dismiss on the ground that the Complaint fails to state a cause of action against the defendant. The plaintiffs resist the Motion. Counsel for the Government and plaintiffs have filed briefs on behalf of the respective parties.

On examining the Motion, the plaintiffs' opposition, and the entire record, which includes depositions of witnesses and exhibits thereto filed in the case, the Court concludes that the only issue raised by the Motion is whether or not Mary Rush was an employee of the United States at the time of the tragic automobile collision.

Since matters outside of the pleadings have been submitted by the defendant in support of the Motion and by the plaintiffs in opposition to the Motion, the Court, under the provisions of Rule 12(b) of the Federal Rules of Civil Procedure, will treat the Motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

In 1964, the Congress of the United States provided for and adopted a policy to "eliminate the paradox of poverty in the midst of plenty in this Nation", by passing the Economic Opportunity Act. (42 U.S.C. § 2701 et seq.) As stated by the Congress in its findings and declaration of purpose, "[I]t is highly desirable to employ the resources of the private sector of the economy of the United States in all such efforts to further the policy . . . .". Congress amended the Economic Opportunity Act in 1967

In Subchapter II, the Congress provided for urban and rural community action programs. (42 U.S.C.A. § 2781 et seq.) As provided by the Act, a community action agency shall be a state or political subdivision of a state

(having elected or duly appointed governing officials), or a combination of such political subdivisions, or a public or private non-profit agency or organization which has been designated by a state or such a political subdivision or combination of such subdivisions with certain powers and authorities to carry out the provisions of the Act. (42 U.S.C.A. § 2790)

A community may be a city, county, multi-city, or multi-county unit. Under Subsection (d), the Director may designate and provide financial assistance to a public or private non-profit agency as a community action agency in lieu of a community action agency designated under Subsection (a). (§ 2790)

Each community action agency, including a public or private non-profit agency, shall have a governing board consisting of a certain number of equal representation of (1) elected public officials, (2) members chosen in accordance with democratic selection procedures adequate to represent the poor in the area served, and (3) from business, industry, labor and other groups and interests in the community. The Congress required that the power and authority of the community action agency governing board shall include the power to appoint persons to senior staff positions, to determine major personnel, fiscal, and program policies, to approve overall program plans and priorities, and to assure compliance with conditions of, and approve proposals for financial assistance under the Act. (42 U.S.C.A. § 2791)

In addition, the Congress provided that, in order to carry out the overall responsibility under the Act, a community action agency must have authority under its Charter or applicable law to receive and administer funds under the Act, funds and contributions from private or other local sources and funds under any Federal or State assistance program, and, therefore, be authorized to act as grantee, contractor, or sponsor of projects appropriate for inclusion in a community action program. (42 U.S.C.A. § 2795)

Also, Congress provided for financial assistance to community action agencies and authorized appropriations for the purposes specified in the Act.

Phillips and Monroe Counties in Arkansas were considered to be and were designated as poverty areas within the meaning of the Economic Opportunity Act. An Arkansas corporation was organized as a non-profit corporation created under and by virtue of the laws of the State of Arkansas, §§ 64–1901 to 61–1921, Ark.Stats.1947. The name of the corporation was Arkansas Mid-Delta Office of Economic Opportunity, Inc. It was established in and for the Mid-Delta area of Arkansas, with the intention of forming a non-profit corporation under the Economic Opportunity Act of 1964, as amended, in order to participate in the program and to receive grants and other assistance. Included in the authority under the Articles of Incorporation was the power to devise plans and receive funds under contract from the Office of Economic Opportunity of the United States and other public and private grants and assistance to aid the underprivileged and poor people of the area.

In addition to open membership by any citizen of the area, the Articles of Incorporation provided for a Board of Governors with authority to devise plans, programs, and assistance within the framework of the Economic Opportunity Act and to receive grants and assistance from other public and private sources.

The By Laws of the corporation established administrative procedures for the purpose of alleviating or eradicating poverty by mobilizing resources, public and private, in an attack on poverty.

The Arkansas Mid-Delta Office of Economic Opportunity, Inc., as a private non-profit community action agency, made application, pursuant to the authority of the Board of Governors, for grants of assistance pursuant to the

Economic Opportunity Act as provided by Congress. In the meantime, Congress had authorized certain of these programs to be transferred to the Department of Health, Education and Welfare (H.E. W.). Application by the Mid-Delta corporation was made to H.E.W. for assistance in connection with a part of its community action plans.

Mrs. Mary Rush was employed, pursuant to the authority of the Board of Governors of Mid-Delta. She was employed as a part-time driver for the Head Start program. She was an hourly employee and was paid $1.60 per hour for four (4) hours per day. Her primary duties were to transport children from their homes to the Head Start Center. These children were generally underprivileged and of kindergarten age. She provided her own automobile to transport these children, for which she was paid ten cents ($0.10) per mile. She was engaged in this community action program as a driver to transport children back and forth from their homes for approximately four (4) years. She used her husband's automobile for this purpose. Mrs. Rush was paid by Mid-Delta, largely from grants of assistance from O.E.O. and H.E.W., pursuant to the application and contract between O.E.O. and Mid-Delta.

On the afternoon of March 14, 1973, about 2:30 or 3:00 o'clock, Mary Rush, in the course of her regular duties with Mid-Delta Corporation, was transporting the two minor plaintiffs, Christopher Smith and Sharon Vincent, along with ten other pre-school children, back to their homes from the Head Start Center. Her automobile was involved in a head-on collision with another vehicle driven by Ruben Houston. Sharon Vincent and Christopher Smith received serious injuries; one child was fatally injured and the others received some injury, as did Mary Rush. Mary Rush was in her lane of traffic when the head-on collision occurred.

It is undisputed that Mary Rush was an employee of Arkansas Mid-Delta Office of Economic Opportunity, Inc. and was acting in the scope of her employment at the time of the collision and resulting injuries.

Plaintiffs do not contend that Mrs. Rush was a "formal" employee of O.E.O. or H.E.W. Plaintiffs insist that Arkansas Mid-Delta was, in fact, an agency or instrumentality of the United States Government within the meaning of the Federal Tort Claims Act.

Title 28, U.S.C.A. § 1346(b) provides that suits may be brought against the United States "for injury or loss of property . . . caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of their office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred".

Title 28, U.S.C.A. § 2671, defines Federal Agency as:

" 'Federal Agency' includes the executive departments and independent establishments of the United States, and corporations primarily acting as, instrumentalities or agencies of the United States but does not include any *contractor* with the United States". (Emphasis Supplied)

Said Section 2671 defines employees of the Government as:

" 'Employees of the Government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation".

In applying these definitions to the issue here involved, the threshold question is whether Mid-Delta is an instrumentality or agency of the United States.

Counsel for the plaintiffs insist that the immediate employer (Mid-Delta Office of Economic Opportunity, Inc.) of the negligent party is a de facto Federal

agency in that it was acting primarily as an agent or instrumentality of the United States Government. Counsel relies on the case of Toth v. United States, 107 F.Supp. 37 (N.D.Ohio 1952).

The Court cannot agree with this view. The Court is constrained to conclude that this record does not support the contention that Mid-Delta was acting primarily as an agent or instrumentality of the United States. Toth v. United States, supra, is inapposite. There, the Public Housing Administration of the United States was a Federal agency authorized by the Congress of the United States. The Court concluded that the lease to the Youngstown Metropolitan Housing Authority was not, in fact, a lease. All profits were reserved to the Government. There was detailed supervision of the operation and management of the project by the Government and an approved operating budget. The use of the property was restricted; the Government controlled all fiscal affairs; funds were carefully circumscribed; the Government determined the use of the property and title to all personal property was vested in the Government. There, the Court concluded, the local housing authority was acting as an instrumentality of the United States to achieve the purpose of the Government in the management and use of the housing project. Toth v. United States, supra, at page 38.

An identical question to the instant case was decided by the District Court, Stuart, J., for the Southern District of Iowa, within this Circuit, in an unpublished decision in the case of Hughes v. United States, 383 F.Supp. 1071, 1973. There, the Court said, inter alia:

"The community action agencies are grantees of federal assistance, and are not created by the federal government.

\* \* \* \* \* \*

Individual employees are hired by the local community action agency under broad guidelines laid out by the O.E.O. See 'Community Action Memo 23–A, dated August 26, 1966; Part A.' The wages are to be set by the local agency, except that no one may be paid less than the federal minimum wage, and salaries over $5,000 per annum must be approved by O.E.O., if the salary is an increase of 20% or $2500 over prior wages. Vacations, sick leave, health care benefits, moving expenses, etc., are at the discretion of the local agency."

The Court went on to say that the employee there involved "cannot be considered an employee of the United States and that Iowa East Central T.R.A.I.N. is an entity separate and distinct from the United States government and the O.E.O."

Further, the Court concluded that federal control of TRAIN (under the O.E.O. Act) does not cause TRAIN to be primarily an instrumentality of the federal government within the meaning of the Federal Tort Claims Act, 28 U.S.C.A. § 2671.

The Court concludes in the instant case that this is the correct construction of the Act as disclosed by the entire record in the case. See Anderson v. Simpson, (E.D.Tenn.1972), unpublished, Docket CA 62–18 and 63–58; Junior E. Baisden v. United States of America, Civil Action 69–64, (S.D.Ohio 1970); Cf. Robles v. El Paso Community Action Agency, Project Bravo, Inc. et al., 456 F.2d 189, 190–191 (5 C.A. 1972).

Furthermore, the record discloses that Mary Rush, as an employee of Mid-Delta O.E.O., Inc., an Arkansas corporation, filed a claim with the Arkansas Workmen's Compensation Commission which was considered and acted upon by the Commission, which granted benefits to her for her injury, and which she received. As pointed out by counsel for the Government, if Mary L. Rush had, in fact, been a Federal employee, she would have been covered and entitled to benefits under the provisions of the Federal Employee Compensation Act. See Waters v. United States, 328 F.Supp. 812 (E.D.Ark. 1971).

Accordingly, the Motion of the United States of America, treated as a Motion for summary judgment, will be granted.

476

It is, therefore, considered, ordered and adjudged that the defendant's Motion for summary judgment be and the same is hereby granted and the Complaint of the plaintiffs dismissed.