**Antonio Ramos PEREZ et al., Plaintiffs,**

**v.**

**UNITED STATES of America et al., Defendants.**

**Civ. No. 75–570.**

United States District Court,
D. Puerto Rico.

Feb. 9, 1978.

**624**

Law Office of Harvey B. Nachman, Rafael Soltero Peralta, Santurce, P. R., for plaintiffs.

Julio Morales Sánchez, U. S. Atty., Eli B. Arroyo, San Juan, P. R., for CRUV & Commonwealth Ins. Co.

Donald E. Jose, Trial Atty., U. S. Dept. of Justice, Washington, D. C., Rafael Pieras, Hato Rey, P. R., for defendants.

## OPINION AND ORDER

TORRUELLA, District Judge.

In 1949, the Department of Housing and Urban Development (HUD) provided financing for the design and construction of Residencial Llorens Torres, a low rent public housing project completed in 1953, pursuant to an Annual Contribution Contract (ACC) under which the Municipal Housing Authority of San Juan developed and operated the project, selling bonds maturing serially over a forty year period to finance the capital costs involved.[1]

The balconies of the project are verandah-like with open roofs, having one rail or fence for support. At present, Codefendant Corporación de Renovación Urbana y Vivienda is the owner and administrator of the project.

Plaintiff minor Nancy Ramos de Jesús lives at Building No. 89 of the project. On February 21, 1974, she fell from a balcony in the back part of her third floor apartment, suffering multiple injuries which resulted in her current state of quadraplegia.

Plaintiffs have sued the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80, CRUV and its insurer. Pending adjudication at this moment are Motions to Dismiss filed by Codefendants U.S.A. and CRUV. We will first consider the Motion filed by Codefendant United States of America.

Codefendant U.S.A. argues basically that in order to hold it liable under the Federal Tort Claims Act, Plaintiffs must prove some wrongful or negligent act or omission

---

1. Marketability of the bonds was assured by a HUD pledge to make an annual contribution each year sufficient to pay the maturing principal and interest if necessary. See 42 U.S.C. § 1410.

of a government employee acting within the scope of his employment under the circumstances that the United States of America, if a private citizen, would be liable under applicable state law. The Government avers that since it owed no duty to the tenants of the project to assure the safety of the parameters of the buildings, the complaint fails to state a cause of action against the United States of America and must be dismissed.

Plaintiff argues that the Municipal Housing Authority had little, if any, discretion in making the plans and specifications for the project. Approval of the plans by the Public Housing Authority (PHA) [2] was a condition precedent for the release of the contract documents for bidding. Plaintiff further argues that since P.H.A. provided for day-to-day inspection, reserved the right to check compliance with the construction contracts, plans and specifications, and could issue the Physical Completion Certificate without awaiting the local authority's approval, it performed the job of a combined owner-contractor. This being so, Plaintiffs deem the Motion to Dismiss to be without merit, since the balcony was constructed under the directions of P.H.A.

■ The pivotal issue in this case is whether CRUV was an independent contractor or an agent vis-a-vis the United States.[3] More precisely, the test for liability is not whether CRUV received federal funds and was required to comply with federal standards and regulations in building the project but rather whether CRUV's day-to-day operations were supervised by the Federal Government. See *United States v. Orleans,* 425 U.S. 807, 815, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); *Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973); *Maryland v. United States,* 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965). Thus the factor of control over the project by the United States is critical to Plaintiff's position.[4]

■ Residential Llorens Torres was constructed by the Municipal Housing Authority (MHA) of the Capital of Puerto Rico (now CRUV) and most of the funds were obtained from the Public Housing Administration under 42 U.S.C. § 1401 et seq. As a condition to the receipt of these federal funds, MHA contracted with the United States and was subjected to numerous regulations, minimum standards and inspections.[5] On the other hand, the Municipal Housing Authority (MHA) selected the construction site, designed the project, contracted for architectural and construction services, arranged for inspection and accepted the project upon completion. HUD reserved the right to review and approve the plans and specifications and inspect the progress of the work for the sole purpose of protecting the financing interest of the United States in the project.[6] Concerning the day-to-day control of the project, it seems clear from the Defendant's answers to interrogatories that periodic inspections were made by the Project Engineer of the San Juan PHA Regional Office.[7] A comparison of day-to-day supervision of the

---

**2.** Predecessor to H.U.D.

**3.** *Harper v. United States,* 515 F.2d 576 (C.A. 5, 1975); *Andreotti v. United States,* 469 F.2d 95 (C.A. 9, 1972); *United States Fidelity & Guaranty Co. v. United States,* 446 F.2d 851 (C.A. 10, 1971); *Lipka v. United States,* 369 F.2d 288 (C.A. 2, 1966), cert. denied 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 997 (1967), aff'd 249 F.Supp. 213 (N.D.N.Y., 1965).

**4.** See *Logue,* infra, on remand, 488 F.2d 1090 (C.A. 5, 1974); *Vincent v. United States,* 383 F.Supp. 471 (E.D.Ark., 1974), aff'd 513 F.2d 1296 (C.A. 8, 1975).

**5.** See Annual Contributions Contract, Part 2, Section 103, 104(B), 109, 119, 126, 127, 129(D), 134, 302, 304(B), 309(B), (C), 323; see also 17 L.P.R.A. 52.

**6.** See generally 17 L.P.R.A. 31 to 55; ACC, Sec. 107, 109(B), 120–122, and 126.

**7.** The project was inspected approximately ninety times over a 3½ year period, for an average of about twice a month. We can hardly consider this day-to-day control over the project in a Orleans-Logue-Maryland sense.

project with the conditions imposed by HUD upon MHA reveals not only a lack of the requisite control[8] but also a compliance with both federal and local legislation in the field of low-income housing.[9] Applying the test adopted from *Logue* and *Maryland* in *Orleans*, we conclude that CRUV was not an agent or employee of the U.S.A. for purposes of imposing vicarious liability on the latter for any alleged negligent acts and/or omissions of CRUV.[10]

We are faced yet with another matter to adjudicate, that being whether the U.S.A. may be held liable as a principal for the injuries suffered by Plaintiff minor. Plaintiffs' theory of recovery is predicated upon the deficiency in height of the balcony from which Plaintiff fell.[11] She alleges that the balcony was unsafe, was negligently constructed, and was too low. However, we have found no objective standard to measure the accuracy of Plaintiff's contention.

Initially we part from the premise that under the Federal Tort Claims Act, we must apply the law of the state where the act or omission complained of occurred. 28 U.S.C. § 2674; *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); In Puerto Rico, Article 1802 of the Civil Code, 31 L.P.R.A., 5141, is controlling in this matter.[12] The balcony herein in question was 37½″ high at the time of the accident.[13] Failure to provide a higher balcony or one with a higher rail[14] cannot under Puerto Rico law constitute by itself evidence of negligence unless it constitutes a violation of a statute or ordinance, or where the balcony has been constructed or maintained in such a manner that it may be considered as a hazard for the persons using it. See *Torres v. Metropolitan School,* 91 P.R.R. 1 (1964) and cases cited therein.[15] We have searched for statutes and ordinances setting a minimum height for balconies[16] and while some restrictions on balco-

---

**8.** Puerto Rico law applies basically the same test of control in distinguishing between an employee and an independent contractor. See *Vélez v. García Commercial,* 100 P.R.R. 645 (1972); *Padilla v. Municipality of Manatí,* 88 P.R.R. 18 (1963); cf. *Barrientos v. Gov. of the Capital,* 97 P.R.R. 539 (1969); 31 L.P.R.A.

**9.** See 17 LPRA 32; 42 U.S.C. §§ 1401, 2781 et seq.

**10.** In distinguishing the master-servant from the principal-independent contractor relationship, the Supreme Court of Puerto Rico has noted:

"The most important test refers to the control over the work which is reserved by the employer. Regardless of whether or not it is exercised, the important fact is the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor. It is equally important to determine whether the instructions given will have to be followed. This same control may be exercised in several ways and the relationship between the parties might be determined according to the manner the control is exercised in the light of the circumstances of each case. If the means and manner of performance of the work are controlled, the person in charge of the work would be a servant and *an independent contractor relationship would exist where the person performing the work is subject to the will of the employer only as to the result, but not as to the means or manner of accomplishment. Retention by the owner of the*

*right to inspect and supervise is compatible with the status of an independent contractor.*" (Emphasis supplied). *Mariani v. Christy,* 73 P.R.R. 729, 744–745 (1952), cited in *Pérez v. Hato Rey Bldg. Co.,* 100 P.R.R. 880, 886 (1972).

**11.** There is no intimation either in the record or the Complaint as to how Plaintiff fell. We assume the absence of intervening causes and that the fall was just short of being spontaneous.

**12.** As applicable, it reads thus:

"A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."

**13.** Compare *Torres Ocasio v. Housing Authority,* 93 P.R.R. 439 (1966) where a 40″ balcony was involved and where, in a situation analogous to the one before us, the local housing authority was found not liable for a fatal fall of a minor from a second story balcony in a low-income housing project.

**14.** It appears from a sworn statement of a HUD maintenance engineer that 37½″ is the average height of a sampling he took of nine balconies in the same project. (Affidavit of Luis G. García, dated December 29, 1976).

**15.** Cf. *Just v. Moreno,* 63 P.R.R. 647 (1944).

**16.** See 23 R. & R.P.R. § 4.34 et seq.

nies are apparent [17] none have been found which require us to apply considerations of strict liability or negligence to the fact pattern before us.[18] Indeed, it appears from Defendant U. S. A.'s answer to interrogatories that the Puerto Rico Planning Board approved the project. While this approval does not automatically foreclose recovery, under the circumstances before us, we can perceive of no fact pattern which would entitle Plaintiff to recovery under the Federal Tort Claims Act.[19]

The matter before us was brought pursuant to Rule 12(b)(6), Fed.R.Civ.P. and treated as a Motion for Summary Judgment under Rule 56, Fed.R.Civ.P. Parties have been given an ample opportunity to present their positions and supporting documentary evidence to the Court. We note that the party opposing summary judgment must establish the existence of an issue of fact which is both "genuine" and "material." The evidence manifesting the dispute must be substantial, going beyond the allegations of the complaint.[20] While the record may reveal the existence of doubt as to some facts, we find said doubts immaterial to the issue of negligence. We reach this conclusion after having examined the sworn statements on file, noting the failure of Plaintiff to have illustrated to the Court the existence of a genuine issue of material fact, to warrant our hearing this case on the merits.[21] See *Morton v. Browne*, 438 F.2d 1205 (C.A. 1, 1971).

In view of the above, the action against Codefendant United States of America is hereby dismissed.[22] There existing no independent grounds for jurisdiction in the action against CRUV, the same is hereby dismissed. Rule 12(b)(1), Fed.R. Civ.P.

The Clerk of the Court is instructed to enter Judgment accordingly.

IT IS SO ORDERED.

---

**17.** See 23 R. & R.P.R. § 9–846.

**18.** See e. g. *Wilson v. United States*, 434 F.Supp. 72 (E.D.La.1977).

**19.** See *Torres Ocasio v. Housing Authority*, supra.

**20.** *First National Bank of Arizona v. Cities Service Co., Inc.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Hahn v. Sargent*, 523 F.2d 461 (C.A. 1, 1975), cert. denied 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *Beal v. Lindsay*, 468 F.2d 287, 291 (C.A. 2, 1972).

**21.** This is so notwithstanding our normal hesitation to dispose of issues of negligence summarily. See *Craghead v. United States*, 423 F.2d 664 (C.A. 10, 1970).

**22.** Plaintiff has partially based the existence of a cause of action upon alleged OSHA violations. (See Interrogatories dated August 31, 1976, # 12). However, even were violations to exist based upon construction faults, we can hardly hold the government liable for violating a statute which took effect roughly twenty years after the project was initiated.