David R. SCHNEIDER Jr., et al.

v.

UNITED STATES of America, et al.

Civ. A. No. 89–0670.

United States District Court,
E.D. Louisiana.

Feb. 20, 1990.

---

Philippi P. St. Pe, Metairie, La., for plaintiffs.

Eneid A. Francis, Asst. U.S. Atty., New Orleans, La., for U.S.

## ORDER AND REASONS

PATRICK E. CARR, District Judge.

This matter is before the Court on plaintiffs' motion for new trial. Determining in its discretion that oral argument and opposition are unnecessary,[1] the Court CANCELS the hearing on the motion, previously set for March 14, 1990, and now DENIES the motion.

### I.

In 1963, The Pine Terrace Apartments were constructed in Slidell, Louisiana. The owner was Pine Terrace Apartments Corporation, and the contractor was Perrillat–Rickey Construction, Inc. The construction was financed by a loan secured by a mortgage. Under a regulatory agreement authorized by section 207 of the National Housing Act[2] (FHA Form No. 2466) and entered into between the property owner and the Federal Housing Administration (FHA), the FHA guaranteed to pay the loan to the lending bank in the event the property owner defaulted on its loan.

A "lump sum" construction contract (FHA Form No. 2442) between the property owner and the contractor, but not signed by the FHA, provided that the contractor would perform all work, subject to specifications that were prepared by the architect firm of Freret & Wolf and included, among others, "the FHA Supplementary General Conditions."[3] The contract further provided:

---

1. *Compare Villanueva v. CNA Insurance Companies*, 868 F.2d 684, 688 (5th Cir.1989) (oral argument not necessary for a motion for summary judgment) *with Wilson v. Johns–Manville Sales Corp.*, 873 F.2d 869, 872–73 (5th Cir.1989) (same for a Rule 60(b) motion for relief from judgment). *See generally* F.R.Civ.P. 78; Local Rule 2.04E.

2. Act of June 27, 1934, c. 847, § 207, 48 Stat. 1246, 1252 (codified as amended at 12 U.S.C. § 1713).

3. For the current mandatory general conditions, see 24 C.F.R. § 200.925 *et seq.* (1989). *See also id.* § 207.24(a) ("At the time the mortgage is insured, the mortgagor shall be obligated to construct and complete new housing accommodations on the mortgaged property that are de-

All requests for changes in the Drawings and Specifications must be in writing signed by the Owner and the Lender and shall be conditioned upon acceptance by the [Federal Housing] Commissioner, which acceptance may be subject to such conditions and qualifications as the Commissioner in his discretion may prescribe, it being understood that the Commissioner at all times has the right to require compliance with the original Drawings and Specifications.

FHA Project Inspection Reports (FHA Form No. 2449) indicate that a Henry C. Hinrichs of the FHA performed six inspections of the construction work between February and August 1963. The form he signed August 27, 1963 indicates that construction was "100% completed," that progress was "[s]atisfactory," and that "[s]urvey received shows all improvements acceptably located to date"; just above his signature appears the following printed paragraph:

> CERTIFICATION: I certify that I have inspected this property on this date, that all corrections essential to compliance with the approved drawings and specifications have been reported, that the amounts reported herein represent acceptable work and materials....

The evidence in the record does not otherwise indicate that the FHA either designed or constructed the apartment complex.

In 1968, the property owner defaulted on the loan. Pursuant to section 10(a)(ii) of the regulatory agreement,[4] the lender assigned the loan and mortgage to the Department of Housing and Urban Development (HUD).[5] On December 28, 1968, the property was conveyed to HUD by deed in lieu of a foreclosure. HUD owned the property until November 13, 1972, at which time HUD conveyed the property to Pine Terrace Apartments, a partnership.

At some time subsequent to 1972, Crescent Federal Savings Bank, a federally-chartered savings bank whose accounts were insured by the Federal Savings and Loan Insurance Corporation (FSLIC), became the owner of the property, or at least of a portion covering Apartment No. A-201. By a resolution of the Federal Home Loan Bank Board dated June 19, 1986, FSLIC was appointed as receiver of the bank. On June 20, 1986, FSLIC as Receiver took over the bank and acquired, among other things, the above property.

By written contract effective June 21, 1986,[6] FSLIC as Receiver retained B.J.F. Development, Ltd. (BJF) as an asset manager for, among other properties, the Pine Terrace Apartments, including Apartment A-201. Among the provisions of the contract are the following ones:

> 2.1. *General Nature of Engagement.* The RECEIVER hereby engages [BJF] as an independent contractor to provide the services relating solely to the management and disposition of Assets set forth in this Agreement. [BJF] hereby accepts such engagement and agrees to perform such services on the terms ... specified in this Agreement.

> . . . .

> 2.3. *Goals of [BJF].* In carrying out its duties under this Agreement, [BJF]

---

signed principally for residential use [and] conform to standards satisfactory to the [Secretary of HUD]....").

**4.** *See also* 12 U.S.C. § 1713(g), (k); 24 C.F.R. § 207.258 (1989).

**5.** In 1965, all functions, powers, and duties of the FHA were transferred to the Secretary of HUD. *See Thorpe v. Housing Authority of City of Durham,* 393 U.S. 268, 277 n. 27, 89 S.Ct. 518, 523 n. 27, 21 L.Ed.2d 474 (1969); Department of Housing and Urban Development Act, Pub.L. No. 89-174, § 5(a), 79 Stat. 667, 669 (1965) (codified at 42 U.S.C. § 3534(a)); *see also* 24 C.F.R. § 200.4 (1989).

**6.** The contract in the record (Exh. A to the United States' motion for summary judgment) was executed effective January 1, 1988; as Exhibit B to the motion shows and as plaintiffs' allegations against BJF in a related action before this Court (*Schneider v. The Pine Terrace,* Civil Action No. 89-4647) imply, BJF had been serving as asset manager before 1988. *Compare also* United States' Local Rule 2.09E Statement of Uncontested Material Facts, No. 13 *with* Plaintiffs' Local Rule 2.10E Opposition of Material Facts in Dispute, at 4. Plaintiffs do not dispute that the material terms of the earlier contract between FSLIC as Receiver and BJF are the same as those in the 1988 contract.

will at all times ... act in good faith, with the best interests of [Crescent Federal]'s creditors ... and with the same standard of care of the RECEIVER itself.... [BJF] will use its best efforts to perform its duties under this Agreement in a manner reasonably expected to achieve that goal.

. . . .

4.1. *General Duties.* In general, [BJF]'s duties under this Agreement are to take charge of the Assets, to prepare Business Plans for the Assets ..., and to provide asset management services and dispose of such Assets as provided in this Agreement.

. . . .

(c) *Supervisory Construction Management.* Where completion or renovation of an Asset is contemplated in a Business Plan approved by the RECEIVER, [BJF] will, consistent with such approved Business Plan ... negotiate and contract for all necessary services ... [and] inspect all work in place....

. . . .

4.2. *Authority Prior to Approval of Business Plan.*

(a) *Preservation of the Assets.* Prior to approval of the Business Plan, [BJF] ... shall take such actions as may be necessary to preserve each Asset and continue each Asset operation in a commercially reasonable manner....

. . . .

5.1. *Engagement of Third Parties to Perform [BJF]'s Duties.* [BJF] may enter into agreements with Third Parties to carry out [BJF]'s obligations under this Agreement. To the extent that [BJF]'s duties under this Agreement are performed by Third Parties, [BJF] will monitor the execution of such duties and supervise the performance of such Third Parties, and [BJF] will remain ultimately

responsible to the RECEIVER for the performance of [BJF]'s duties.

On July 21, 1987, FSLIC approved of a management agreement between BJF as representative of FSLIC as Receiver and Capital Realty Services, Inc. for, among other properties, the Pine Terrace Apartments, including Apartment A–201. Among the provisions of this contract are the following ones:

4.1 *Appointment of Manager.* During the term of this Agreement, [Capital Realty] agrees ... to supervise and direct the management and operation of the Properties. [Capital Realty] shall act in a fiduciary capacity with respect to the proper protection of and accounting for the Properties. Under this Agreement all transactions performed by [Capital Realty] will be done as an independent contractor....

. . . .

4.6 *Budget Operation.* [Capital Realty] shall operate and manage the Properties in a prudent manner consistent with standards customary and usual in the operation of comparable properties and facilities, and shall provide such services as are customarily provided by managers and operators of properties of comparable class and standing consistent with the Properties....

In addition to the other obligations of [Capital Realty] set forth herein, [Capital Realty] shall render the following services and perform the following duties for [BJF] and [FSLIC as Receiver] in a faithful, diligent and efficient manner:

. . . .

5. Use its best efforts at all times during the term of this Agreement to operate and maintain the Properties according to the highest standards achievable consistent with the operation of comparable quality properties; [and]

. . . .

10. Consult with [BJF] on special problems that may arise in connection with the Properties.

. . . .

4.7 *Alternations, Repairs and Maintenance.* [Capital Realty] shall maintain or cause to be maintained the Properties and common areas thereof ... [and] purchase supplies required for the operation and maintenance of the premises.... [Capital Realty] shall report promptly to [BJF] any conditions in the Properties requiring the attention of [BJF].

[Capital Realty] shall provide, or cause to be provided by subagents, and supervise all services necessary for the proper repairs, alteration, decoration, operations, care, protection and maintenance of the Properties....

. . . .

[Capital Realty] shall consult with [BJF] on special problems that may arise in connection with the Properties.

. . . .

5.2 *Subrogation and Indemnity or Deductible Provisions.*

. . . .

[Capital Realty] shall indemnity and hold harmless [BJF] and [FSLIC as Receiver] from any loss, damage, injury or liability imposed on either [BJF], or [FSLIC as Receiver] as result of [Capital Realty]'s performance of its duties hereunder with the scope of [Capital Realty]'s responsibilities under this Agreement.

It is undisputed that FSLIC did not otherwise "supervise or direct" the work of either BJF or Capital Realty.

Pursuant to its authority under these agreements, Capital Realty acting for FSLIC as Receiver executed a written lease with plaintiff David R. Schneider Jr. on July 10, 1987 for Apartment A–201 at the apartment complex. Next to the printed provision "The leased premises shall be occupied by the following persons only:" is hand-written "Self & 2 children part-time." The lease also contains the following provision:

Lessee assumes responsibility for the condition of the premises. Lessor will not be responsible for damage caused by ... any vices or defects of the leased property, or the consequences thereof, except in case of positive neglect or failure to take action toward remedying of such defects and the damage caused thereby. Should Lessee fail to promptly so notify Lessor, in writing, of any such defects, Lessee will become responsible for any damage resulting to Lessor or other parties.

Apartment A–201 is located on a second or higher floor. The apartment contains a sliding-glass door that opens onto a balcony overlooking the courtyard below.

On July 24, 1987, Derrick Schneider, David's 14–month baby, was with his father at the apartment. According to plaintiffs, David opened the sliding-glass door and "momentarily turned his attention to reach for a cigarette" and "the young child entered the balcony and immediately (within two seconds) fell through an opening" in the railing on the balcony.

## II.

Alleging that the railings on the balcony were unreasonably dangerous by being too far apart and that Derrick suffered serious personal injury from the fall, Derrick's parents, David and Terri Schneider acting individually and on behalf of Derrick, have sued the United States under the Federal Tort Claims Act (FTCA).[7]

Plaintiffs' complaint asserts three grounds for their claims: (1) the FHA, when it inspected the construction of the property in 1963, failed to have this unsafe condition corrected; (2) HUD, when it owned the property between 1968 and 1972,

---

**7.** 28 U.S.C. §§ 2671–2680; *see also id.* § 1346(b). *See generally* Annotation, *Federal Tort Claims Act: Liability of United States for Injury or* *Death Resulting from Condition of Premises,* 91 A.L.R.Fed. 16 (1989).

failed to have this unsafe condition corrected; and (3) FSLIC, when owned the building in 1987, failed to have this unsafe condition corrected and/or to have David Schneider warned about this unsafe condition.

In January 1990, the United States moved for summary judgment.[8] As for the first ground, it argued that plaintiffs' claims come within the "misrepresentation" and/or the "discretionary function" exception of the FTCA. As for the latter two grounds, it argued that it cannot be liable for strict liability under the FTCA and thus cannot be liable under La.Civ.C. articles 2317 and 2322 as owner or custodian of the apartment inasmuch as there is no evidence that either the HUD or FSLIC knew of the unsafe condition. As for the second ground, it also argued that it cannot be liable under Louisiana law as owner of the apartment where HUD had not owned the building for 14½ years. As for the third ground, it also argued that FSLIC properly delegated duties of inspection and maintenance to independent contractors.

By Minute Entry signed January 29, 1990, the Court granted the motion and dismissed plaintiffs' entire complaint with prejudice. Plaintiffs now timely move for a new trial. While the Court already considered and, at least implicitly, rejected plaintiffs' arguments now raised, the Court nonetheless believes further explanation is warranted. For the following reasons, the Court now denies plaintiffs' motion.

## III.

### A. *Plaintiffs' first ground (FHA)*

■ Two Supreme Court cases control the first ground. In *United States v. Neustadt,*[9] the Court explained the "mis-representation" exception of the FTCA, 28 U.S.C. § 2680(h). There, the plaintiffs sued the United States for damages resulting when they, relying on a negligently excessive FHA appraisal made after a property inspection by an FHA staffmember, paid the seller a price in excess of the fair market value. The Court held that the plaintiffs' claim of negligent inspection and appraisal came within this exception and thus was barred. The Court emphasized that the FHA "mortgage insurance program was not designed to insure anything other than the repayment of loans by lender-mortgagees."[10]

In *Block v. Neal,*[11] the Court distinguished *Neustadt.* In *Block,* the plaintiff received an FmHA loan for the construction of a house; she alleged that FmHA officials voluntarily undertook to supervise construction of her house but did so negligently. The Court held that (while, consistent with *Neustadt,* the plaintiff would be barred from maintaining any claims of reliance on negligent misstatements made by FmHA officials in any property appraisals) the plaintiff's claim did not come within the "misrepresentation" exception. The Court explained:

> FmHA's duty to use due care to ensure that the builder adhere to previously approved plans and cure all defects before completing construction is distinct from any duty to use due care in communicating information to [plaintiff].[12]

The Court specifically noted, however, that it was not deciding whether the plaintiff's claim came within the separate "discretionary function" exception to the FTCA or whether the plaintiff had sufficient evidence to support her claim.[13]

---

**8.** In May 1989, the United States had moved to dismiss the entire action for lack of subject matter jurisdiction on the sole grounds that the claims for the FHA's role were barred by the misrepresentation exception to the FTCA and that the claims for HUD's role were barred since it no longer owned the property; the motion gave no basis for dismissing the claims for FSLIC's role. Without giving written reasons, the Court denied the motion by Minute Entry on June 5, 1989.

**9.** 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961).

**10.** *Id.* at 709, 81 S.Ct. at 1301.

**11.** 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983).

**12.** *Id.* at 297, 103 S.Ct. at 1094.

**13.** *See id.* at 294, 103 S.Ct. at 1092.

The Court now turns to the instant action. In opposition to summary judgment dismissal of this ground, plaintiffs supplied the regulatory agreement between the original property owner and the FHA, the construction contract between the original property owner and the contractor, and various FHA inspection reports; in their motion for new trial, plaintiffs have sought to provide no further evidence in support of this claim. While plaintiffs' complaint may have pleaded sufficient *allegations* to defeat a 12(b)(6) motion to dismiss, these four exhibits are insufficient to show *evidence* necessary to defeat summary judgment where as here plaintiffs bear the burden of proof at trial.[14]

First, the documents alone do not raise a genuine dispute of material fact under Louisiana state law that the FHA either voluntarily (like the FmHA in *Block*) or otherwise undertook not merely to inspect and appraise the apartment complex during its construction, but also to supervise its construction, and particularly the construction for the balcony railings. Evidence that an FHA official inspected the construction work about once a month and that the contractor had to comply with FHA standards and regulations is, without more, insufficient to create a genuine dispute of material fact.[15]

As they did in their opposition to the summary judgment motion, plaintiffs again note that the deadline for conducting all discovery was not to be until April 15, 1990.[16] Yet they never requested the Court, either formally by written motion and affidavit under F.R.Civ.P. 56(f) or informally by letter or phone call, to continue the government's motion in order to give plaintiffs an opportunity to conduct more discovery. Nor did or do they state, other than in most vague and general terms,[17] what further discovery they would conduct; they suggest no specific interrogatories or requests for production or admission they would propound to the government nor any depositions or subpoenas duces tecum of any witnesses. Noting further that plaintiffs did not file their lawsuit until over 1½ years after the accident and that the government filed its summary judgment motion over 11 months after plaintiffs filed their suit, the Court is loathe to vacate its summary judgment on the mere suspicion that further, late-come discovery might possibly support plaintiffs' factual asser-

**14.** In their motion for new trial, plaintiffs state that this Court erroneously relied on an affidavit by the government's attorney. Pretermitting an inquiry into plaintiffs' puzzling supposition (the United States submitted no affidavits of any kind with its motion), the Court remarks that the government, once it set forth the basis for its motion (i.e., set forth the material facts it contended were undisputed), had no duty to present *any* "affidavits or other similar materials *negating* [plaintiffs'] claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (emphasis in original).

**15.** *Perez v. United States,* 444 F.Supp. 623, 625–26 (D.P.R.1978) (granting summary judgment in favor of the United States under the FTCA, where plaintiffs' child fell from the balcony of a housing project financed by the PHA (another HUD predecessor) and where a PHA project engineer inspected the property about twice a month over the 3½–year construction period), *aff'd,* 594 F.2d 280, 285–86 (1st Cir.1979); *see Alexander v. United States,* 605 F.2d 828, 834 (5th Cir.1979).

**16.** At a preliminary Rule 16(b) scheduling conference held August 2, 1989, the Court set a discovery deadline of January 25, 1990. Neither plaintiffs nor the government ever sought to have this deadline extended. On January 16, 1990, the same day the government filed its motion for summary judgment, the Court extended discovery at the request of one of the principal defendants in Civil Action 89–4647 (a related case that plaintiffs have brought against various private persons and that was recently *removed to this Court and consolidated with the* instant action); while the Court did not limit the extension of discovery solely to this other case, the Court notes that it was not presented with any suggestion that plaintiffs needed or wanted any additional discovery from the government or anyone else.

**17.** Plaintiffs' opposition to the summary judgment motion merely states: "The remaining discovery against the USA is to discover its conduct as it related to the design and supervision of the balcony railings when first constructed; their inspection of the property during the course of their ownership, 1968 to 1972; and their conduct relative to inspections during their ownership at the time of the accident." Plaintiffs' motion for new trial is even more vague: "discovery is incomplete on the issues of negligence of the USA."

tions (even assuming that lack of evidence on this point were the sole basis for entering summary judgment).[18] "After adequate opportunity for discovery," plaintiffs nonetheless failed to "adduce some evidence of facts which, if proved at trial, would justify a judgment in [their] favor";[19] thus, summary judgment was appropriate on this ground.

Second, even assuming that plaintiffs could present evidence that as a matter of Louisiana state law the FHA had voluntarily agreed with the original property owner and/or the lending bank and/or the contractor to supervise the construction, plaintiffs present no authority for their implicit proposition that Louisiana state law would extend any such duty of a non-propertyyowner/non-contractor to a potential lessee of the property 24 years later.[20] Unlike the plaintiff in *Block*, plaintiffs here had no direct, or even indirect, contact with the FHA.[21]

■ Third, plaintiffs present no evidence that the building did not in fact conform with any FHA-approved plans and drawings (i.e., that the contractor did not follow the architect's plans and drawings). To the narrow extent that plaintiffs may be alleging instead that these plans and drawings themselves were defective (i.e., that the architect's plans called for balcony railing

of an unreasonably unsafe spacing) and that the FHA was negligent for not demanding the plans and drawings be corrected, any such allegation would come within the separate "discretionary function" exception of the FTCA, § 2680(a). The statutory and regulatory scheme under which the FHA acted[22] gave it the discretion of what specifications to require in order to issue its FHA mortgage insurance.[23] Any decision whether to promulgate regulations on the width of balcony railings for FHA mortgage insurance was an administrative decision grounded in social, economic, and public policy; such decisionmaking was not "an operational function,"[24] but instead a " 'discretionary act[ ] of the government acting in its role as a regulator of the conduct of private individuals.' "[25]

### B. *Plaintiffs' second ground (HUD)*

■ Plaintiffs assert that the United States is liable for HUD's failure to correct the unsafe railings when it was owner of the property for a period between 1968 and 1972.

In response to the government's undisputed observation that the United States cannot be liable under the FTCA for claims of strict liability,[26] plaintiffs merely cite

**18.** *Cf. Bernhardt v. Richardson–Merrell, Inc.*, 892 F.2d 440, 443–44 (5th Cir.1990) (upholding the district court's refusal to consider untimely submitted evidence in opposition to a summary judgment motion where plaintiffs had been dilatory in conducting discovery).

**19.** *See Meyers v. M/V Eugenio C,* 842 F.2d 815, 817 (5th Cir.1988), *adhered to on reh'g,* 876 F.2d 38 (5th Cir.1989).

**20.** *See Perez,* 594 F.2d at 287–88 (HUD owed no affirmative duty to a tenant to ensure the safety of a balcony in a HUD-financed-inspected housing project). Similarly, even assuming that Louisiana law might extend such a duty in certain circumstances, plaintiffs have presented no factual evidence that the FHA voluntarily or otherwise extended any such duty into the indefinite future.

**21.** *Cf. Bonuchi v. United States,* 827 F.2d 377, 380 n. 5 (8th Cir.1987).

**22.** *See* 12 U.S.C. §§ 1701c(a), 1713, 1715b; 24 C.F.R. §§ 200.925–.943, 207.24(a) (1989).

**23.** *Cf. Williamson v. United States Department of Agriculture,* 815 F.2d 368, 374–78 (5th Cir.1987). *See generally United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines ),* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

**24.** *Contrast Denham v. United States,* 834 F.2d 518, 521 (5th Cir.1987).

**25.** *Lively v. United States,* 870 F.2d 296, 298 (5th Cir.1989) (quoting *Varig,* 467 U.S. at 813, 104 S.Ct. at 2764).

**26.** *E.g., id.* at 300 (citing *Laird v. Nelms,* 406 U.S. 797, 802–03, 92 S.Ct. 1899, 1902, 32 L.Ed.2d 499 (1972)); *see also Smith v. United States,* 674 F.Supp. 683, 686 (D.Minn.1987) (FTCA suit where woman fell down stairs of building owned by HUD); *Wilson v. United States,* 434 F.Supp. 72, 76 (E.D.La.1977) (FTCA suit where child was injured from broken glass in a building owned by HUD).

Louisiana cases [27] for the general proposition that the owner of a building has the nondelegable duty under La.Civ.C. article 2322 to ensure that its property is reasonably safe and free from ruin.[28]

In order to recover under Louisiana law for either strict liability under articles 2317 and 2322 or general negligence under article 2315, "the plaintiff has the burden of proving that ... the property which caused the damage was in the custody of the defendant" [29] at the time of the accident. As the government properly notes, however, under Louisiana law, the duty of a person as property owner—the person's legal status as custodian of the property—does not extend indefinitely into the future, years after the person is no longer the property owner.[30] The cases cited by plaintiffs are inapropos, for they neither faced this time issue nor otherwise implied a result contrary to the one the Court reached here.

Because HUD had not owned or otherwise held any possessory interest in the property for over 14 years, the Court finds as a matter of law that HUD did not have care and custody, or *garde*,[31] of the property in 1987, when plaintiffs' child fell from the balcony.[32] Thus, the Court dismissed plaintiffs' second ground for recovery as well.

## C. *Plaintiffs' third ground (FSLIC)*

■ Plaintiffs correctly concede that under the FTCA, the United States cannot be vicariously liable for the negligent acts of independent contractors.[33] Thus, the United States cannot be held liable for any independent negligence of BJF (with whom FSLIC had contracted to be "an asset manager" of the apartment building) or of Capital Realty (with whom FSLIC had contracted to conduct day-to-day management and rental of the apartment building) for not correcting or warning about any alleged defects in the balcony railing.[34] Nor do plaintiffs argue otherwise.

The government then repeats its arguments that it cannot be held liable for strict liability and that there is no evidence of negligence by FSLIC itself. In response, plaintiffs repeat that a property owner has the nondelegable duty under Louisiana law to repair and/or warn about unsafe conditions on its property. Plaintiffs improperly disregard the interplay between state law and the statutory exceptions and contours of the FTCA.[35]

In its minute entry granting the government's motion for summary judgment, the Court wrote: "Plaintiffs overlook that a

---

**27.** See *Olsen v. Shell Oil Co.*, 365 So.2d 1285, 1293 (La.1978); *Carter v. Board of Supervisors of LSU*, 459 So.2d 1263, 1265 (La.App. 1st Cir. 1984), *writ denied*, 462 So.2d 1248 (La.1985).

**28.** The Court pretermits whether widely-spaced balcony railings could constitute a ruin under article 2322.

**29.** *Carter*, 459 So.2d at 1265–66; *see also Olsen*, 365 So.2d at 1289 (to establish liability under article 2322, "the defendant must be [the building's] owner").

**30.** See *Hartford Accident and Indemnity Co. v. South Central Bell Telephone Co.*, 497 So.2d 1034, 1037 (La.App. 3d Cir.) (citing *Norman v. Sorrel*, 391 So.2d 496, 498 (La.App.3d Cir.1980), *writ denied*, 396 So.2d 1325 (La.1981)), *writ denied*, 498 So.2d 756 (1986).

**31.** See generally *Loescher v. Parr*, 324 So.2d 441, 447–449 & n. 7 (La.1975) ("The things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them.").

**32.** *Cf. Wright v. United States*, 404 F.2d 244, 246 (7th Cir.1968) (United States was not responsible for post-sale actions of a purchaser of government property).

**33.** *Lathers v. Penguin Industries, Inc.*, 687 F.2d 69, 72 (5th Cir.1982) (citing *Alexander v. United States*, 605 F.2d 828, 833 (5th Cir.1979); *Aretz v. United States*, 604 F.2d 417, 427 (5th Cir.1979)). *See generally United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) (enunciating the test under the FTCA for determining whether a person is an employee of the United States or of an independent contractor).

**34.** See *Truesdale v. CMC Realty Co.*, 671 F.Supp. 1173, 1175 (N.D.Ill.1987) (granting United States summary judgment under the FTCA where plaintiff slipped in a building repossessed by HUD and managed under contract by a third-party); *see also* cases cited below at note 36.

**35.** The Court pretermits whether La.R.S. 9:3221 would also bar recovery. *See, e.g., Cox v. Busch*, 503 So.2d 715, 716–17 (La.App. 3d Cir. 1987).

landowner's duty—to the extent it is non-delegable—can only be a strict liability duty." The Court now explains further. To say that a property owner has the non-delegable duty to ensure that its property is reasonably safe means that the owner will be liable for injuries caused by any unsafe conditions on the property even if the owner was as diligent as any ordinary prudent owner would be and even if the owner had hired the best property manager to maintain and repair the property. In other words, it means that the owner can be liable even if the owner is not negligent. In sum, it means that the owner is strictly liable for injury from any unsafe condition on the property.

Several other courts have come to this same conclusion that the FTCA bars recovery for unsafe property conditions where the United States delegated its safety responsibilities to one or more independent contractors, notwithstanding otherwise applicable state law that makes such safety responsibilities of the property owner non-delegable;[36] plaintiffs cite, and the Court has found, no cases or authority that hold or suggest otherwise.

The statutory and regulatory scheme under which FSLIC operated gave it broad powers concerning its handling of property it obtains as receiver of a federal savings and loan association;[37] nothing in this scheme purported to preclude FSLIC from hiring private, independent contractors to act as "asset managers" or day-to-day supervisors of the property it receives. In sum, then, FSLIC had the power under federal law, notwithstanding any elements of Louisiana state law, to delegate its duty of inspection and repair to independent contractors.

It follows, then, that plaintiffs' sole basis of liability against the United States is under an ordinary negligence theory.[38] There is no contention that FSLIC itself created the alleged dangerous condition, undertook to repair and/or warn about the balcony condition, or subjectively knew about the balcony condition. Thus, the issue is whether FSLIC delegated its duty to repair and/or warn to either BJF or Capital Realty and, if so, whether it did so negligently.

For summary judgment purposes, the government bears the burden to establish undisputed evidence that FSLIC in fact had delegated this duty. If the government establishes as much, then plaintiffs still have one remaining ground for defeating summary judgment: they may present evidence of a genuine dispute whether FSLIC knew or should have known that the person(s) to whom it delegated this duty (viz., BJF and/or Capital Realty) were incompetent or would otherwise be unfit for the task.[39] Because plaintiffs present no evi-

**36.** *See Smith v. United States,* 674 F.Supp. 683, 686 (D.Minn.1987) (FTCA suit where woman fell down stairs of building owned by HUD) (citing *Dumansky v. United States,* 486 F.Supp. 1078, 1093 (D.N.J.1980), *and Aetna Life and Casualty Insurance Co. v. United States,* 508 F.Supp. 298, 301 (N.D.Ill.1981)); *Maltais v. United States,* 546 F.Supp. 96, 101 (N.D.N.Y.1982), *aff'd in unpublished opinion,* 729 F.2d 1442 (2nd Cir.1983) (table).

The court in *Maltais* alternatively held that a decision by a government agency to delegate any state-law duties concerning safety to an independent contractor came within the discretionary exception of the FTCA, § 2680(a). *See id.* at 101.

**37.** *See* 12 U.S.C. § 1729(b)(1)(A), (d); 12 C.F.R. § 549.3(a) (1989) (incorporating terms of 12 C.F.R. § 548.2).

**38.** For a plaintiff to establish a negligence claim against the property owner, the property owner must be "the party who actually created the dangerous condition ... or a party who knew of the dangerous condition and had a duty to correct it but failed to do so." *Dusenberg v. McMoRan Exploration Co.,* 458 So.2d 102, 105 (La. 1984).

**39.** *Cf. Hodge v. United States,* 310 F.Supp. 1090, 1105 (M.D.Ga.1969), *aff'd on basis of opinion below,* 424 F.2d 545 (5th Cir.1970) (per curiam). Plaintiffs misapprehend the Court's citation to *Barbetta v. S/S Bermuda Star,* 848 F.2d 1364 (5th Cir.1988), in its minute entry granting summary judgment. The Court cited the case for the general proposition that where a defendant delegates some duty (be it a voluntary or mandatory duty) to a third-party (e.g., to a doctor as in *Barbetta* or to BJF and Capital Realty as here) but cannot as a matter of controlling law be liable for the independent acts of negligence of that third-party, a plaintiff's sole basis for recovering on a negligence claim against the defendant is for the plaintiff to prove that the defendant was negligent in how it delegates that duty to the third-party.

dence on this second point, the ultimate issue becomes whether uncontradicted evidence establishes that FSLIC delegated the duty of repair and/or warning to either BJF or Capital Realty.

In their statement of contested issues, plaintiffs asserted that FSLIC "failed to require B.J.F. [or] Capital Realty ... to inspect the property to arrange for others to inspect the property for the purpose of discovering the unreasonably dangerous condition of the balcony railings." As sole support for this statement, plaintiffs cite (1) an excerpt from the deposition of a Capital Realty employee stating that FSLIC, Capital Realty, and BJF shared office space in the same building so that all three could "have personnel ... as close as possible for the purpose of discussing the property management or what might have been done" and (2) single excerpts from the depositions of two BJF employees and another Capital Realty employee, each to the end that to the deponent's knowledge FSLIC never formally or informally requested either Capital Realty or BJF to inspect the property for safety hazards or unsafe conditions on the property.

The deposition excerpts do not assert that in fact FSLIC did not ask or require either BJF or Capital Realty to inspect and repair the property; instead, the excerpts only suggest that the deponents themselves were unaware of whether or not FSLIC had in fact so asked or required. Wholly absent from the deposition excerpts are any questions concerning the provisions of the written contracts between FSLIC and these two parties or any suggestion that the parties orally or otherwise amended the terms of these contracts subsequent to their execution.

Paragraph 4.1 of the contract between FSLIC and Capital Realty requires Capital Realty to supervise, manage, and operate the property "in a fiduciary capacity." Similarly, paragraph 4.6 requires it to operate and manage the property "in a prudent manner" and "in a faithful, diligent and efficient manner ... [to] use its best efforts ... to operate and maintain the Properties according to the highest standards."

Paragraph 4.7 requires it to "maintain or cause to be maintained the Properties and common areas" and to "provide, or cause to be provided ... and supervise all services necessary for the proper repairs, alteration, decoration, operations, care, protection and maintenance of the Properties." Further, paragraph 5.2 holds Capital Realty responsible for "any ... injury ... as a result of [its] performance of its duties." While the contract does not specifically state that "Capital Realty shall inspect for unsafe balcony railings," Capital Realty's broad duties under its contract necessarily and implicitly included the subsidiary duty to inspect the property for unsafe conditions and, for any unsafe conditions found, either to repair them or at least to warn others about them.

While the contract between FSLIC and BJF speaks in broader terms to reflect the broader role BJF was to have over the assets FSLIC had received from Crescent Federal, that contract likewise necessarily and implicitly included the delegation of FSLIC's duty to repair and/or warn about defective conditions in the property. In sum, then, the contracts between FSLIC and these two parties establish that FSLIC had in fact fully delegated this duty not to just one party, but even to two.

The government has presented undisputed evidence that FSLIC delegated its duty of repair and/or warning to BJF and Capital Realty, and plaintiffs have presented no evidence that FSLIC knew or should have known that neither BJF nor Capital Realty would inspect the property properly notwithstanding the contract provisions requiring them to do so. Thus, plaintiffs have not presented a material issue of disputed fact necessary to defeat summary judgment against the United States.

## IV.

For these reasons, the Court DENIES plaintiffs' motion for new trial.