Yomar **VÁZQUEZ–FILIPPETTI; Luz Filippetti–Pèrez; Marlyn Vázquez–Filippetti; Yohannie Vázquez–Filippetti, Plaintiffs, Appellees/Cross–Appellants,**

v.

**BANCO POPULAR DE PUERTO RICO; Federal Insurance Company, Defendants, Appellants/Cross–Appellees,**

**José Toro–Rodríguez; Félix Toro–Rodríguez; Cooperativa de Seguros Múltiples; Cecilia Petitón–Garcia, Defendants/Cross–Appellees.**

Nos. 05–2372, 06–1432.

United States Court of Appeals, First Circuit.

Heard March 8, 2007.

Decided Sept. 27, 2007.

45

Stephen A. Cozen, with whom Elizabeth Chambers Bailey, Cozen & O'Connor, Luis G. Martinez–Llorens, Francisco J. Colon–Pagan, Colon, Colon & Martinez, P.S.C., Ivan M. Fernandez, and Law Office of Ivan M. Fernandez were on brief, for appellants/cross-appellees.

Jose Luis Ubarri–Garcia, with whom David W. Roman, Brown & Ubarri, Luis R. Mena–Ramos, and Luis R. Mena–Ramos Law Offices were on brief, for appellees/cross-appellants.

Vicente Santori Margarida for defendants/cross-appellees.

Ricardo L. Ortiz–Colon, Jose L. Ramirez–Coll, and Fiddler, Gonzalez & Rodriguez, P.S.C. on brief for amicus curiae.

Before LIPEZ, Circuit Judge, SELYA, Senior Circuit Judge, and DICLERICO,* District Judge.

* Of the District of New Hampshire, sitting by designation.

LIPEZ, Circuit Judge.

Yomar Vázquez–Filippetti lost her leg after being hit by a car, driven by José Toro–Rodriguez, while using an ATM machine. She sued the bank, on whose property her injury occurred, claiming that the design of its ATM facility was negligent. She also sued Toro (and his wife and insurance company) for his negligent driving. A jury found for Vázquez and awarded her nearly six million dollars in damages. The bank appeals that judgment. Toro has not appealed the judgment against him.

Despite our reluctance to disturb jury verdicts, we conclude that the district court erred in denying the bank's Rule 50 motion for judgment as a matter of law because Vázquez did not present sufficient evidence of negligent design to permit the jury's verdict. Given this outcome, the cross-appeal (in which both the bank and Toro appear as cross-appellees), challenging the district court's denial of attorney's fees, necessarily fails as to the bank; we affirm the district court's denial of fees assessed against Toro and his co-defendants.

## I.

### A. Factual Background

We recount the facts, which are largely undisputed, in the light most favorable to the jury's verdict. Banco Popular de Puerto Rico ("BPPR") owns and operates a branch facility on Villa Street in Ponce, Puerto Rico. The Villa Street branch includes a single, one-story building, a drive-through banking area comprised of three lanes for vehicular traffic, a parking lot, and an outdoor ATM, located on an exterior wall of the building facing the drive-through.[1] A car using the drive-through enters from Villa Street, follows the lane as it makes a left turn, stops at the teller station, and then follows the lane as it turns left again before exiting onto Villa Street. A car stopped at the teller station in the middle lane is directly behind a person using the ATM, at a distance of approximately fifty feet (about ten of which is comprised of the elevated sidewalk in front of the ATM). Other than a five-inch curb (painted "traffic yellow"), there is no barrier or fence between the roadway for the drive-through area and the sidewalk in front of the ATM.

On the day of the accident, Vázquez[2] was using the ATM machine, with her back to the drive-through, while defendant Toro was using the middle lane of the drive-through.[3] Upon completing his transaction, Toro shifted the car into gear; he testified that the car then accelerated, despite the fact that he did not press the accelerator pedal. He stated that the car moved so quickly that he did not have time to apply the brakes, turn the steering wheel, or honk the horn to alert Vázquez. In a matter of seconds, Toro's car jumped the curb, hit the wall of the bank, and pinned Vázquez against the ATM. Vázquez testified that she heard the sound of a car

1. The Villa Street branch opened for service in 1965; the drive-through began operating in 1974. The ATM was installed in 1994.

2. Both at trial and on appeal, Vázquez's mother, Luz Filippetti–Pèrez, and two sisters, Marlyn and Yohannie Vázquez–Filippetti, appeared as co-plaintiffs, suing for their own derivative damages. Because their claims are derivative, we refer throughout this opinion to Yomar Vázquez–Filippetti as "the plaintiff" or "Vázquez," while recognizing that all four plaintiffs' claims will survive or fail together.

3. Toro was driving his brother's car, a Mercury Grand Marquis, and was at the bank to conduct a business-related transaction for his brother's business. Toro, his brother, his insurance company, and his wife were all co-defendants at trial, and are cross-appellees in this appeal.

accelerating, similar to the noise made when a car engine revs, but that she had no time to react before being hit. The car hit with such force that at least one airbag deployed.

Vázquez's right leg was crushed by the front bumper of Toro's car, requiring its amputation above the knee. Her rehabilitation and recovery processes were long and painful, and the loss of her leg has caused her continual difficulties.

A little more than a month after the accident, Toro's car was examined by an insurance inspector. The inspector was unable to tell whether the car had been repaired or altered in any way since the accident. Nonetheless, the inspector reported that both the acceleration system and the brake system of the car were in satisfactory working condition. He could identify nothing that would explain Toro's account of the car's acceleration.

## B. Trial

The six-day trial commenced in March 2005, after the district court denied the defendants' motions for summary judgment. Vázquez claimed that BPPR was negligent in four respects: 1) it installed the ATM in a location vulnerable to vehicle penetration by cars exiting the drive-through; 2) it failed to install the ATM at a safer alternate location; 3) it installed the ATM in a location where users would face away from the cars using the drive-through; and 4) it failed to install guardrails, barriers, or other devices to protect ATM users from the vehicular traffic at the drive-through.

Vázquez presented these four theories to the jury through her own testimony, and that of her relatives, defendant Toro, and an acquaintance who was at BPPR with

her on the day of the accident (but did not see Toro's car hit her).[4] She did not offer the testimony of any engineering experts, and she successfully objected to BPPR's attempt to present evidence about the absence of prior similar accidents. Therefore, Vázquez ultimately argued that the testimony of a handful of fact witnesses and photographs of the Villa Street facility were sufficient to demonstrate BPPR's negligence.

BPPR argued that Toro was solely responsible for the accident, and that it had not been negligent because it could not have reasonably foreseen the sort of third-party negligence that caused Vázquez's injuries. On the final day of trial, BPPR presented the testimony of Dr. Rolando García–Pacheco, a transportation systems engineer. García testified that he had participated in the design of about thirty off-street facilities involving pedestrian and vehicle traffic and about twelve drive-through bank facilities. He was admitted as an expert without voir dire or objection from Vázquez.

In his direct examination, García testified that the design of the BPPR property complied with all relevant industry codes and regulations. He described a series of factors that an engineer would consider in designing a facility like this one, including: the driver (based on an average driver, this includes the driver's visual capacity, capacity of movement, and other factors that might affect his behavior), the type of vehicle likely to use the facility (including such factors as the vehicle's turning radius, size, weight, and rate of acceleration or braking), the physical properties of the site (including level and condition of terrain), and weather conditions. Applying all of those factors to the BPPR facility, García concluded that the drive-through area was

---

**4.** Vázquez also presented testimony by a number of medical professionals on the issue of damages. None of their testimony is relevant to the issues presented in this appeal.

properly and safely designed. He specifically pointed to the larger-than-necessary turning path for vehicles exiting the drive-through, the ample room for a vehicle to come to a stop between the drive-up teller station and the ATM, the "design speed" (or the average speed at which users of the facility are likely to drive), the presence of an elevated and painted curb, and the wider-than-necessary sidewalk in front of the ATM.

At a sidebar conference during García's testimony, plaintiff's counsel commented that he had not expected some of the testimony. The district court explicitly invited the plaintiff to call her own engineering expert in rebuttal. Vázquez ultimately called no rebuttal witnesses.

At the close of trial, BPPR moved for judgment as a matter of law, under Federal Rule of Civil Procedure 50, arguing that Vázquez had failed to carry her burden because her claim was premised on a theory of negligent design and she had not presented any evidence showing that the accident at issue was foreseeable. The district court rejected this argument: "plaintiff is not going to argue design, because this is not a design case; it's a foreseeability case, upon the facts as presented in this trial." The court explained that foreseeability would be a question for the jury and that the evidence presented (describing the layout and measurements of the drive-through and ATM facility) was sufficient for a jury to conclude that an injury like Vázquez's was foreseeable.

The jury ultimately decided that both BPPR and Toro were negligent, with BPPR seventy-five percent responsible for Vázquez's injuries and Toro twenty-five percent responsible. The district court entered judgment for the plaintiff, holding the defendants jointly and severally liable, and issued a written opinion explaining its denial of BPPR's renewed Rule 50 motion.

The court again rejected the defendants' contention that this was a negligent design case, viewing it instead as a generic negligence case, and held that Vázquez was not obligated to present an expert witness because the safety of the ATM facility was "not beyond the competence of lay determination." The court stated that "the jury was free to substitute its own common-sense judgment [as to foreseeability] for that of the expert in part or in whole." With that framework in place, the court summarized the plaintiff's four theories of liability and concluded that "there was a legally sufficient evidentiary basis for a reasonable jury to find BPPR negligent."

BPPR filed a timely appeal, and Vázquez cross-appealed, arguing that the district court erred in denying her an award for attorney's fees. Toro did not appeal the jury's verdict, but appears before us as a cross-appellee on the attorney's fees issue.

## II.

Our review of the district court's denial of BPPR's Rule 50 motion is constrained: we must view all of the evidence and draw all reasonable inferences in favor of the verdict. *Casillas–Díaz v. Palau*, 463 F.3d 77, 81 (1st Cir.2006); *Webber v. Int'l Paper Co.*, 417 F.3d 229, 233 (1st Cir.2005). We may reverse the district court's judgment, and the jury's verdict, only if "we determine that the record, thus viewed, strongly and overwhelmingly points to but one conclusion—that no reasonable jury would have reached a contrary result." *Webber*, 417 F.3d at 233.

As this is a diversity case, we apply Puerto Rico law to all substantive matters and "we are bound by the teachings of the state's highest court." *N. Am. Specialty Ins. Co. v. Lapalme*, 258 F.3d 35, 38 (1st Cir.2001). If the Puerto Rico Supreme

Court has not definitively addressed a question, we may consult other sources as we "make an informed prophecy" about what rule the commonwealth courts would likely follow. *Id.* Therefore, Puerto Rico's tort law governs our analysis of Vázquez's claim.

We must determine the nature of Vázquez's claim before considering whether she presented sufficient evidence to prevail.

## A. Nature of Vázquez's Claim

 Under Article 1802 of Puerto Rico's Civil Code, recovery of tort damages requires a showing that the defendant "by act or omission cause[d] damage to another through fault or negligence." P.R. Laws Ann. tit. 31 § 5141. The three essential elements for general tort claims are: (1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause). *See Torres v. KMart Corp.*, 233 F.Supp.2d 273, 277–78 (D.P.R.2002) (citing *Cintrón–Adorno v. Gómez*, 147 D.P.R. 576, 598–99 (1999)). As is true in most jurisdictions, foreseeability is a central issue in these cases, as it is an element of both breach of duty and proximate cause. *See Woods–Leber v. Hyatt Hotels of P.R.*, 951 F.Supp. 1028, 1036 (D.P.R.1996), aff'd, 124 F.3d 47 (1st Cir. 1997) (stating that foreseeability is a component of breach of duty and proximate cause); *Marshall v. Perez–Arzuaga*, 828 F.2d 845, 847 (1st Cir.1987) ("In Puerto

Rico, just as in the common law jurisdictions, foreseeability is the touchstone of extracontractual liability.").

 Breach of duty has, as its name implies, two sub-elements: duty and breach. In most cases, the duty is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances. *See Ortiz v. Levitt & Sons of P.R., Inc.*, 1 P.R. Offic. Trans. 407, 101 D.P.R. 290 (1973). Foreseeability is a component of the "breach" sub-element because a defendant only breaches his duty if he acted (or failed to act) in a way that a reasonably prudent person would foresee as creating undue risk. *See Pacheco Pietri v. ELA*, No. RE–89–524, 1993 P.R.-Eng. 839,817, 133 D.P.R. 907 (June 30, 1993) (Alonso, J., dissenting) (" '[T]he negligent act is defined as a breach of the duty imposed or recognized by law, to act, as would a prudent and reasonable man, . . . in order not to expose to foreseeable and unreasonable risks of damages, as a result of the actor's behavior, those persons who . . . a prudent and reasonable man would have foreseen . . . would be exposed to the unreasonable risk created by the actor.' ") (quoting 1 H.M. Brau, *Los daños y perjuicios extracontractuales en Puerto Rico* 183 (2d ed.1986)).[5] In other words, a person breaches the duty of reasonable care when his actions create reasonably foreseeable risks. A plaintiff, then, must show the foreseeable risks created by defendant's acts or omissions in order to carry his burden as to this element of a tort claim.[6]

5. *Los daños y perjuicios extracontractuales en Puerto Rico* is a standard treatise of tort law that is frequently cited by commonwealth courts.

6. Once a plaintiff has demonstrated that the defendant was negligent (meaning that the defendant breached its duty of care), she must then demonstrate that the defendant's negli-

gence was the proximate cause of her injuries. Foreseeability is also a component of the proximate cause analysis, which has two sub-elements: actual cause and foreseeability. A defendant's actions may only be the proximate cause of a plaintiff's injuries if they in fact caused the injuries and the defendant could have reasonably foreseen that the inju-

■ In particular, claims based on allegedly dangerous conditions on commercial property ("premises liability claims") require a showing that the defendant knew of or should have foreseen the risks created by the condition.

When it comes to business establishments, the general rule is that although a business owner is not the absolute insurer of the safety of its patrons, the business owner has a duty to keep said establishment in a safe condition so that the clients do not suffer harm or damage. However, liability is only imposed in situations that involve risky conditions inside the business premises that the owner knew or should have known existed. In other words, a plaintiff must prove that the defendant had actual or constructive knowledge of the dangerous condition that most likely than not caused the damage.

*Torres*, 233 F.Supp.2d at 278 (internal citations omitted). Cases premised on the existence of a dangerous condition often arise from a "slip-and-fall," caused by a wet or slippery floor, and involve a claim that the business owner was negligent in permitting the condition to remain because it is foreseeable that a wet floor is likely to cause injury. Similar claims include stairway railings in disrepair, burned-out exterior or security lights in a dangerous area, and unsturdy or unstable floors. In any of these circumstances, the property itself, if it were in pristine condition, would be safe, but some act or omission by the owner has created dangers or risks to the property's visitors.

■ Claims arising from allegedly dangerous properties may, alternatively, take the form of a defective design (or negligent design) case. The essential elements of a negligent design case are the same as other tort claims: injury, breach of duty, and proximate cause. However, in a design case, the plaintiff also "bear[s] the burden of establishing the applicable standard of care," *Prado Alvarez v. R.J. Reynolds Tobacco Co.*, 313 F.Supp.2d 61, 73 (D.P.R.2004), *aff'd*, 405 F.3d 36 (1st Cir.2005). Whereas a typical tort claim involves the generic "reasonably prudent person" standard of care (or duty) and requires the plaintiff to present no evidence about the defendant's duty,[7] a plaintiff in a design case must present evidence as to the specific duty or standard of care applicable to the design of the product or property at issue.

Negligent design cases involve a claim that the property was unsafe from its very conception: the risks to patrons stem from the layout of or the nature of improvements on the property. The flaws alleged might include excessively steep stairways, *e.g.*, *Rigual–Quintana v. United Parcel Serv., Co.*, 195 F.Supp.2d 358 (D.P.R.2002), a balcony without a fence or guardrail, *e.g.*, *Perez v. United States*, 444 F.Supp. 623, 626 (D.P.R.1978), *aff'd*, 594 F.2d 280 (1st

---

ries (or related harms) would result from his actions. *See Malave–Felix v. Volvo Car Corp.*, 946 F.2d 967, 971–72 (1st Cir.1991). Foreseeability, therefore, is relevant to both of these elements of a tort claim. A plaintiff might rely on similar, or even identical, factual evidence to carry her burden on both elements, but they remain distinct legal concepts.

**7.** In *Ramirez Pomales v. Becton Dickinson & Co.*, the district court noted that "proof of 'duty' is not required to state a claim for negligence," 649 F.Supp. 913, 917 n. 7 (D.P.R.1986), *aff'd*, 839 F.2d 1 (1st Cir.1988), because Puerto Rico law assumes that "every man owes to his fellow creatures that degree of care and vigilance as will enable him to enjoy his life with safety ... the obligation to pay damages for a wrongful act flows ... for the lack of prudence or diligence which is normally due in the ambit of human coexistence," *id.* (quoting *Perez Escolar v. Collado*, 90 P.R.R. 785, 788–90 (1969)).

Cir.1979), or a busy intersection without stop signs or lights to direct traffic, *e.g.*, *Nieves–Rosado v. P.R. Hwys. Auth.*, 403 F.Supp.2d 170 (D.P.R.2005). In such cases, the property encountered by the plaintiff existed in the state intended by its owner; it was not in disrepair or altered by some external force or action. Therefore, the alleged defect, or negligence, is inherent in the property's design, and the jury must evaluate the defendant's actions with some understanding of what would, or would not, constitute a reasonably safe design. In most design cases, a plaintiff will only meet her burden of proof if she presents evidence as to the applicable standard of care, because the jury must be sufficiently familiar with that standard to evaluate whether the defendant's design complied with it.

Vázquez argued that this case was not based on a theory of negligent design and instead asserted that BPPR's ATM facility was an unsafe condition, much like a wet floor, which was readily foreseeable to a person with common-sense. Although the district court accepted her view, it did not explain its reason for approaching the case as one of premises liability rather than design defect.

The four "theories" of negligence alleged by Vázquez in her complaint,[8] and reiterated throughout the litigation, all relate to the placement and design of the ATM, relative to the drive-through teller stations. There is no dispute that the placement of the ATM and the failure to construct a barrier were intentional decisions made by BPPR (or an architect or engineer, acting as its agent), as part of the design of the property. It is illogical—and incorrect—to view these allegations as stating a claim based on premises liability, which would address the failure to remedy conditions that the property owner neither intended nor desired.

Indeed, Vázquez recognized that her claims hinged on BPPR's design of its ATM and drive-through facility in her arguments at trial. Her counsel's closing argument included numerous statements indicative of a defective design claim, such as: "Banco Popular didn't get to be what it is today without planning and without foresight. Consider, if you will, the planning and foresight that went into the design, the placement of the nine poles [surrounding the drive-through tellers]." Or: "You heard Dr. Garcia Pacheco tell you how wide the sidewalk is in that picture, how wide the traffic lanes are. You remember he told you that there's something called a turning radius and how the pavement at that spot is graded, it's banked so that cars can flow naturally towards the exit, the banking effect, I think he called it. Ladies and gentlemen, all of that means planning. Somebody sat down and thought about using that, and about making it just that way and not some other way." Or: "How foreseeable is it that a car can go out of control? They call it an unexpected event; that this happened on that day after so many years that the machine was in place . . . . We don't know what happened other days. We know what happened this day, and that's what we're asking you to consider, what happened that day. There is no question about Banco Popular planning this area, designing this set-up." In addition, Vázquez also conceded in argument before us that her claims were based on BPPR's

---

8. As noted, Vázquez claimed that BPPR was negligent because it: (1) installed the ATM in an unsafe location, susceptible to "vehicle penetration"; (2) failed to install the ATM in an alternate (safer) location; (3) installed the ATM in a location where users would face away from vehicular traffic; and (4) failed to install guardrails, barriers, or other devices to protect ATM users.

design of the property. When pressed, counsel agreed that the essential allegation of negligence was that BPPR located and designed the ATM facility in an unsafe and unreasonable way. Therefore, we turn to the merits of BPPR's Rule 50 motion with the understanding that this is a negligent design case.

## B. Legal Framework for Negligent Design Claims

There is no dispute in this case that Vázquez suffered serious injuries; the two disputed elements of her tort claim were breach of duty and proximate cause. *See Torres,* 233 F.Supp.2d at 277–78 (enumerating three elements of a tort claim). BPPR claims that she failed to show that the bank had a duty to design its property so as to prevent extraordinary accidents caused by drive-up customers, and hence she necessarily also failed to show that such a duty was breached by the actual design of the facility.[9]

### 1. Evidence of the Standard of Care in a Negligent Design Case

■ The vast majority of design defect cases from Puerto Rico involve products, rather than structures or buildings. The doctrine of strict liability applies to defective products, *Mendoza v. Cervecería Corona, Inc.,* 97 P.R.R. 487, 500, 97 D.P.R. 499 (1969), but not to services (such as construction or engineering), *In re Reinforced Earth Co.,* 889 F.Supp. 530, 534 (D.P.R.1995). While the instant case remains firmly within the scope of Article 1802 of the Civil Code of Puerto Rico, meaning that liability is contingent on a showing of negligence, we draw on Puerto Rico's law of products liability to understand how Commonwealth courts would approach a negligent design claim such as this.

Puerto Rico has generally followed the example set by California for defective product design claims, *Collazo–Santiago v. Toyota Motor Corp.,* 937 F.Supp. 134, 137 (D.P.R.1996) (finding that the Puerto Rico Supreme Court has repeatedly cited to and followed California decisions in products cases), allowing a plaintiff to prevail under either of two standards: (1) " 'the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner,' " *id.* (quoting *Barker v. Lull Eng'g Co.,* 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443, 457–58 (1978)), or (2) " 'the product's design proximately caused [the plaintiff's] injury and the defendant fails to prove, in light of the relevant factors . . ., that on balance the benefits of the challenged design outweigh the risk of danger, inherent in such design,' " *id.* (omission in original). These two alternative approaches to a product design case are referred to as the two prongs of the *Barker* test. Under either prong, expert testimony is necessary to define the standard of care whenever the design of the relevant product is beyond the experience or knowledge of an average lay person. Puerto Rico courts, and federal courts applying commonwealth law, have applied this rule in a number of product design defect cases.

9. We have noted the overlapping significance of foreseeability to both the breach of duty and proximate cause elements of a tort claim, *see supra* note 6. However, a plaintiff must first establish the breach of duty before a judge or jury examines the question whether that breach was a proximate cause of the plaintiff's injuries. Thus, we focus first on the question of duty, as BPPR has done in its arguments. Because we conclude that the evidence at trial was not sufficient to show the applicable standard of care for BPPR's design, we do not reach the proximate cause question.

For example, in a series of cases against cigarette manufacturers, in which plaintiffs claimed that cigarettes were defectively designed, the claims were dismissed because plaintiffs could not carry their burden of proof without expert testimony. *See Rodríguez–Ortega v. Philip Morris, Inc.,* No. Civ. 03–1529CCC, 2005 WL 2977795, at *5–6 (D.P.R. Nov.7, 2005) ("Plaintiffs bear the burden of establishing the applicable standard of care and proving that [defendant] acted below that standard. Plaintiffs have not named an expert on cigarette design who could testify that [defendant] was negligent in the design of its cigarettes.... Nor have they identified what was the standard of care to which [the defendant] failed to conform.... Plaintiffs having failed to present materials of evidentiary quality to demonstrate that the defendant's cigarettes were defective[ly] designed, their claim for damages on this theory fails." (internal citations and footnotes omitted)); *Prado Alvarez,* 313 F.Supp.2d at 73 (holding that summary judgment was appropriate where "Plaintiffs have not named an expert on cigarette design who could testify that Defendant was negligent in the design of its cigarettes," because plaintiffs in a negligent design case "bear the burden of establishing the applicable standard of care, and proving that Defendants acted below that standard"); *Cruz Vargas v. R.J. Reynolds Tobacco Co.,* 218 F.Supp.2d 109, 119 (D.P.R.2002), aff'd, 348 F.3d 271 (1st Cir. 2003) (same).

Although there have been only a handful of reported negligent design cases in Puerto Rico outside the products context, it appears that commonwealth courts would impose the same requirement for specific evidence, usually in the form of expert testimony, of an objective standard of care (and breach thereof) to cases involving structures or buildings. For example, in *Perez,* 444 F.Supp. at 626, parents of a minor child filed suit after the child fell from the balcony of a public housing project, alleging, inter alia, that the design of the balcony was defective because it was "too low" and should have had a higher handrail. The case was dismissed because the plaintiffs failed to present evidence of "an objective standard [against which the court could] measure the accuracy of Plaintiff's contention." *Id.* Specifically, the court pointed to plaintiff's failure to identify any statutes or ordinances that could bolster the claim of an unreasonable or unsafe design. *Id.*

### 2. Foreseeability

The particular design defect alleged in this case is the failure to design in anticipation of driver error at the drive-through bank. In other words, Vázquez alleged that BPPR had a duty to foresee that some customers using its facilities would drive in a negligent, or even grossly negligent, manner. In *Woods–Leber,* 951 F.Supp. 1028, the District Court of Puerto Rico held that foreseeability, as an element of proximate cause, could not be established through the simple fact that an accident occurred. In that case, a hotel guest sued the hotel after she was bitten by a rabid mongoose while laying near the hotel pool. *Id.* at 1031–32. The plaintiff alleged that the hotel could, and should, have foreseen an attack by a wild animal, even if not specifically an attack by a mongoose, because of the hotel's proximity to a wooded, undeveloped area. She further claimed that the hotel's placement of a food storage cart in the pool area and the commencement of nearby construction work, which might disturb the wildlife living in the wooded area, ought to have put the hotel on notice as to the need to protect guests from wild animals. *Id.* at 1032–33. Rejecting these arguments, the court emphasized the critical nature of the foresee-

ability inquiry, noting that " '[t]he norm of foreseeability is that the risk that must be foreseen must be based on probabilities and not on mere possibilities.' " *Id.* at 1036 (alteration in original) (quoting 1 H.M. Brau, *Los daños v perjuicios extra-contractuales en Puerto Rico* 185 (2d ed.1986)). Based on this principle, the court granted summary judgment for the hotel defendants, because the plaintiff failed to provide evidence of foreseeability. The court stated that the primary method for such proof would be prior similar incidents, but that "some other sort of evidence tending to show that the incident was foreseeable" would also have been acceptable. *Id.* at 1039. In the absence of any such proof, the mere fact that the accident occurred could not serve as evidence that it was foreseeable ex ante. *Id.*

We affirmed the district court's decision, *Woods–Leber v. Hyatt Hotels of P.R.*, 124 F.3d 47, 52 (1st Cir.1997), and reiterated the centrality of foreseeability to a successful tort claim. *Id.* at 50–51 ("The[ ] requirements [for a tort claim] cannot be satisfied unless the plaintiff proves, inter alia, that the injury was reasonably foreseeable (and, thus, could have been avoided had the defendant acted with due care)."). We concluded that the district court "got it right." *Id.* at 51. In the absence of any evidence showing that the accident was foreseeable, the plaintiff could not prevail. *Id.*

## C. Discerning Puerto Rico Law

From these cases discussing Puerto Rico law on the evidence of the standard of care and foreseeability, we distill these principles:

■■■ (1) In a defective or negligent design case, where the design is beyond the common experience or knowledge of an average lay person, the plaintiff must present evidence, usually through an expert witness, as to the relevant standard of care for the design and the way(s) in which the defendant's design fell below that standard. *See Prado Alvarez*, 313 F.Supp.2d at 73.

■■■ (2) In a negligent design case involving the conduct of third parties, such as a driver like Toro, it is particularly critical that a plaintiff present evidence of the applicable standard of care to demonstrate that the defendant had a duty to foresee the conduct of the third party in designing the facility.

## D. Vázquez's Trial Evidence

■■■ As we have described above, Vázquez argued to the jury that the design of BPPR's ATM facility was negligent. In support of her claim, she only offered photographs and numerous fact witnesses who described the layout of the ATM facility. However, Vázquez did not present the jury with any evidence showing what the customary or usual standard of care for traffic or structural engineers designing drive-through facilities is, nor that the design of BPPR's facility fell below that standard. Predicting traffic patterns, determining reasonable stopping distances, and evaluating the efficacy of traffic control devices is not within the experience of an average person. Consequently, Puerto Rico law on design defects required that the plaintiff provide the jury with some evidence regarding the applicable standard of care. Instead, Vázquez invited the jury to determine the standard of care itself, without any guidance. This she could not do.

Moreover, the jury did hear some testimony regarding the considerations and safety elements customarily considered in the design of a facility like BPPR's ATM and drive-through (in other words, the applicable standard of care). This testimony came from BPPR's expert witness, Dr.

Rolando García–Pacheco, whose credentials Vázquez did not contest. García testified about a wide range of factors that traffic safety engineers take into account in designing these types of facilities, and stated his opinion that BPPR's facility satisfied all of the industry safety standards.

Although García's testimony was not rebutted by an opposing expert, Vázquez sought to elicit some contradictory testimony on cross-examination. She now suggests that García contradicted himself during cross-examination, when he testified that, insofar as cars and pedestrians are allowed to be in close physical proximity, pedestrians are likely to be injured, and that the curb in front of the ATM was an inch or two shorter than is standard.

However, García's statement about the potential dangers of mixing cars and people in the same location sheds no light on what level of driver negligence or recklessness an engineer should anticipate in designing a facility that is used, separately, by cars and people. García's testimony that the curb in this case was slightly under five inches high, whereas a "standard" curb is generally six inches high, is also insignificant. He consistently testified that the curb was adequate for its purposes given the nature, layout, and other features of the facility. In short, we find nothing contradictory in García's testimony, and thus reject Vázquez's claim that his testimony bolstered her case.

Regrettably, Vázquez presented no evidence regarding the applicable standard of care for designing this ATM facility, nor any evidence showing that BPPR's design fell below such a standard. Therefore, the district court erred in denying BPPR's motion for judgment notwithstanding the verdict.

### III.

Vázquez cross-appeals, arguing that the district court erred in denying her motion for attorney's fees pursuant to Rule 44.1(d) of Puerto Rico's Rules of Civil Procedure, which states that when "any party or its lawyers has acted obstinately or frivolously, the court shall, in its judgment impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct." P.R. R. Civ. P. 44.1(d).

Vázquez's cross-appeal fails for two reasons. First, as to BPPR, Vázquez is no longer a prevailing party and, thus, is ineligible for attorney's fees. *See Corpak, Inc. v. Ramallo Bros. Printing Inc.*, No. RE–87–586, 1990 P.R.-Eng. 710,162, 125 D.P.R. 724 (Mar. 9, 1990) ("[I]n our system of justice, the assessment or award of attorney's fees does not lie in all cases; it is appropriate only . . . in those cases where the court believes that the *losing party*, or his counsel, has been obstinate or frivolous." (emphasis added)).

Second, as to Toro and his co-defendants, we find no basis on which to disturb the district court's decision. We review the district court's decision for abuse of discretion. *P.R. Tel. Co. v. U.S. Phone Mfg. Corp.*, 427 F.3d 21, 32–33 (1st Cir.2005). Here, the district court reviewed Vázquez's allegations of obstinacy and frivolity carefully, and found that defendants (including Toro, and his insurance company) did not inappropriately deny all liability or file frivolous motions. The court said that it could not conclude "that defendants were 'unreasonably adamant or stubbornly litigious, beyond the acceptable demands of the litigation,' or that their conduct resulted in 'wasting time and causing the court and the other litigants unnecessary expense or delay.' " Dist. Ct. Op. 1/9/2006 at 7, 409 F.Supp.2d 94, 101 (quoting *De Leon Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116, 126 (1st Cir.

1991)). We find the district court's reasoning and explanation persuasive.

## IV.

For the reasons stated, we reverse the entry of judgment against Banco Popular de Puerto Rico; we affirm the judgment denying attorney's fees to Vázquez. All parties shall bear their costs of appeal.

*So ordered.*