**Anthony DIAS, Plaintiff,**

**v.**

**TMS SEACOD GMBH & CO. KG, German Tanker Shipping GmbH & Co. KG and T/V Seacod, Defendants.**

C.A. No. 12–0766.

United States District Court,
D. Rhode Island.

Signed Feb. 5, 2015.

Matthew Viveiros, Hunt & Viveiros, LLC, New Bedford, MA, for Plaintiff.

Thomas J. Muzyka, Kirby L. Aarsheim, Robert E. Collins, Clinton & Muzyka, P.C., Boston, MA, for Defendants.

## DECISION AND ORDER

RONALD R. LAGUEUX, Senior District Judge.

This case is before the Court on the Motion for Summary Judgment brought by Defendant TMS Seacod GmbH & Co., KG, to dismiss Count I of Plaintiff's Complaint. Plaintiff Anthony Dias was employed as an oil inspector and was injured when he slipped and fell while on shipboard inspecting petroleum cargo. Plaintiff alleges that his injuries resulted from Defendants' negligence. At the time of the accident, Plaintiff was engaged in maritime work as a harbor worker, and is consequently covered by the federal Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 et seq.

Defendant TMS Seacod GmbH & Co., KG, ("TMS Seacod") is the owner of the ocean-going tanker Defendant T/V Seacod. Plaintiff has not asserted in rem jurisdiction over the T/V Seacod. Consequently, Count III, stating a negligence claim against the T/V Seacod, is hereby dismissed. Count II, which asserted a claim for negligence against Defendant German Tanker Shipping GmbH & Co., KG, has been dismissed by joint stipulation of the parties. For reasons explained herein, the Court grants summary judgment in favor of Defendant TMS Seacod, thereby dismissing the only remaining count in the Complaint.

### Background

At the time of this event, Plaintiff Anthony Dias was employed by Inspectorate America Corporation as an oil inspector, a position he had held since 1979. In this capacity, Plaintiff routinely boarded docked oil tankers to take samples of their petroleum cargos for laboratory analysis, and to inspect the cargo areas and other conditions on the tankers for regulatory compliance. In his deposition, Plaintiff testified that he inspected cargo on approximately 140 to 150 vessels a year.

On October 31, 2009, Plaintiff boarded the T/V Seacod ("the Tanker") in the early evening while it was docked at the Exxon-Mobil Terminal in East Providence, Rhode Island. It was raining as Plaintiff traversed the Tanker collecting samples from five cargo containers. On the way to the sixth container, Plaintiff slipped, falling forward as his legs went out from under him. In his deposition, Plaintiff described the moment, "And all of a sudden it seemed like I was on an ice skating pond. My feet started to go out from underneath me. I started falling forward." According to the Complaint, Plaintiff fell into the coaming, or raised frame, around the cargo hatch, dislocating his left shoulder and tearing his rotator cuff.

While Plaintiff was on board the Tanker, rain had collected in the channels formed on the deck by what he describes in his memorandum as the Tanker's "higher than normal ribs, rails or risers protruding from the surface of the vessels decking." Pho-

tographs of the Tanker supplied to the Court show a system of solid metal dividers, perhaps four feet high, running crosswise and dividing the Tanker's deck into open compartments, almost resembling office cubicles. The deck of these compartments is likewise ribbed with low metal risers, running in the opposite direction from the dividers and which appear to be approximately three to five inches high. The utility of this design is not apparent to this writer; however, it is clear that rainwater would likely be retained in these channels.

According to Plaintiff's Complaint, his accident was caused because:

... conditions aboard the vessel were such that the defendant, through its crewmembers for whose negligence the defendant is legally responsible, knew or should have known about and had a duty to rectify. The defendant negligently failed to rectify the defective condition which proximately caused the plaintiff to slip fall and sustain a dislocated shoulder and torn rotator cuff.

During his deposition, Plaintiff explained that he thought Defendant was at fault because the Tanker lacked both a non-skid surface and clearly-marked entrances to each tank. In his memorandum opposing summary judgment, Plaintiff expands his theory of liability to include the Tanker's unusually-high raised railings, which resulted in an excessive amount of standing water accumulating in the deck channels, and Defendant's failure to warn him about this "hidden hazard."

### Standard of Review

When ruling on a motion for summary judgment, the court must look to the record and view all the facts and inferences therefrom in the light most favorable to the nonmoving party. *Continental Cas. Co. v. Canadian Univ. Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991). Once this is done, Rule 56(c) requires that summary judgment be granted if there is no dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Factual disputes are genuine when, based on the evidence presented, a reasonable trier of fact could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of persuasion is on the moving party to show that the undisputed facts entitle it to summary judgment as a matter of law. *Jaroma v. Massey,* 873 F.2d 17, 20 (1st Cir. 1989). The moving party must show that "there is an absence of evidence to support" the non-moving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If that burden is met, the nonmoving party cannot rest on its pleadings, but must "set forth specific facts demonstrating that there is a genuine issue for trial" as to the claim that is the subject of the summary judgment motion. *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988).

### Analysis

### The statute

The Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 et seq., provides for compensation to be paid to maritime workers injured in the course of their employment. As with land-lubbers' workers comp, a maritime worker's employer must pay compensation "irrespective of fault as a cause for the injury," 33 U.S.C. § 904(b), but is then shielded from further liability. An injured maritime worker may also bring a third-party action against a vessel in certain instances when the injury is "caused by the negligence of a vessel." 33 U.S.C. § 905(b). The most usual application of these rules

occurs when a dock worker, or longshoreman, is injured in the course of loading or unloading cargo from a vessel. In this scenario, dock workers are generally employed by an independent stevedore company, which is presumed to be in control of the loading operations and, consequently, responsible for the safety of the employees engaged in those operations.

### The vessel's duties

In analyzing this triangular relationship, the Supreme Court has limited the circumstances when a vessel or vessel owner might be liable for a dock worker's injury:

> Under § 5(b) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b), a shipowner must exercise ordinary care to maintain the ship and its equipment in a condition so that an expert and experienced stevedore can load and unload cargo with reasonable safety. As a corollary to this duty, the shipowner must warn the stevedore of latent hazards, as the term is defined by maritime law, that are known or should be known to the shipowner.

*Howlett v. Birkdale Shipping Co., S.A.,* 512 U.S. 92, 93–94, 114 S.Ct. 2057, 129 L.Ed.2d 78 (1994). Citing and quoting from *Scindia Steam Nav. Co., Ltd. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), the *Howlett* Court identified the following duties:

> The first, which courts have come to call the "turnover duty," relates to the condition of the ship upon the commencement of the stevedoring operations. The second duty, applicable once stevedoring operations have begun, provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the "active control of the vessel." The third duty, called the "duty to intervene," concerns the vessel's obligations with regard to cargo operations in areas under the principal control of the independent stevedore.

*Howlett,* 512 U.S. at 98, 114 S.Ct. 2057. In *Howlett,* the longshoreman was injured when, in the process of unloading cargo, he hopped off some bags of cocoa beans onto the deck. He slipped on plastic sheeting, covered by dirt and debris, that was lining the ship deck. While it was customary to line the deck under the cocoa beans with paper and plywood to prevent condensation, it turned out that the plastic had been placed under the bags when the cargo was loaded in Ecuador. Howlett claimed that the cargo was loaded improperly and that, further, the shipowner was obligated to inspect the cargo after loading, discover any potential danger, and warn the stevedore charged with unloading the cargo. *Id.* at 100, 114 S.Ct. 2057. However, the Supreme Court declined to transfer responsibility for the safety of the loading and unloading operations from the stevedore to the shipowner, explaining that "the stevedore is in the best position to avoid accidents during cargo operations." *Id.* at 101, 114 S.Ct. 2057. The Court went on to explain that "the vessel's turnover duty to warn of latent defects in the cargo stow and cargo area is a narrow one. The duty attaches only to latent hazards, defined as hazards that are not known to the stevedore and that would be neither obvious to nor anticipated by a skilled stevedore in the competent performance of its work." *Id.* at 105, 114 S.Ct. 2057.

The First Circuit describes the shipowner's "turnover duty" as comprising the duty to turn the ship over to the stevedore in a safe condition, and the duty to warn the stevedore of non-observable hazards of which the shipowner is aware. *Morehead v. Atkinson–Kiewit, J/V,* 97 F.3d 603, 609 (1st Cir.1996). Additionally, "continuing duties of care" might be imposed if 1) the shipowner retains physical

control of a portion of the vessel during loading; 2) the shipowner, or its crew, participates in the loading operations; 3) the shipowner learns of an unsafe condition that develops after turn-over and realizes the stevedore "improvidently" will not rectify the condition; or if 4) the shipowner is obligated by custom, contract or statute to monitor the safety of stevedoring operations. *Id.* at 609.

### Plaintiff's claims

With these guidelines in mind, it is necessary to examine Plaintiff's claims. Plaintiff's Complaint states merely that Defendant "negligently failed to rectify the defective condition" which proximately caused his fall. No further details or description of any defective condition are provided. Although this matter has not reached the Court on a motion to dismiss,[1] the Court suggests that Plaintiff's claim is probably insufficiently detailed to pass the Supreme Court's strict twenty-first century pleading standard as set forth in *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), which requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

■ During discovery and summary judgment practice, Plaintiff took the opportunity to flesh out his claim. In his deposition, Plaintiff points to the Tanker's lack of a non-skid surface, and the absence of clearly-marked entrances to the tanks. After acknowledging that only about half of the ships he boards have non-skid surfaces, Plaintiff specified that this was a cause of his fall: "I think if I had a good solid footing with the non-skid, that maybe my feet wouldn't have went out from un-

der me. Because I never fell on the railing,[2] but when I got into going into ·the tanks—like any sensible person we're on our guard and we're trying to be as careful as we can . . ." In his memorandum, Plaintiff adds other causes to the list: the Tanker's "unusually high raised railings," the accumulation of standing water, and Defendant's failure to warn him of these risks.

■ The absence of a non-skid surface, which by Plaintiff's own account is not a standard feature of the ships he boards, has generally not been found to violate the vessel owner's duty of care to the stevedore. Nor does it constitute a hidden hazard giving rise to a duty to warn the stevedore. This issue was addressed directly in *Thompson v. Cargill, Inc.,* 585 F.Supp. 1332, 1334 (E.D.La.1984), where the plaintiff slipped on the deck and was injured during an unloading operation.

The lack of a non-skid surface on the deck of the vessel is a condition which existed prior to the commencement of the stevedoring operations. As such, the vessel owner's only duty of care towards the stevedore was to exercise ordinary care in making the area safe for the expert and experienced stevedore, and to warn the stevedore of any hidden unsafe condition. The lack of non-skid surface was not a hidden condition which would give rise to the vessel owner's duty to warn. Furthermore, it would be ludicrous to suggest that the vessel owner had a duty to resurface the portions of the vessel which it turned over to the stevedore. The Court takes judicial notice of the fact that experienced and expert stevedores have fre-

---

[1] Federal Rules of Civil Procedure Rule 12(b)(6).

[2] This statement appears to contradict the claim in Plaintiff's Complaint, that his fall made him "forcibly contact the coaming surrounding a cargo hatch . . ."

quent occasion to perform their work on the decks of vessels which may not have non-skid surfaces.

In the present case, the Tanker's lack of non-skid surface would have been apparent to Plaintiff when he boarded the vessel and criss-crossed its deck taking samples.

A similar analysis applies to Plaintiff's claims of unusually high raised railings, and the accumulation of standing water. The high railings were obvious and present when Plaintiff boarded the Tanker, as was the rain. None of these conditions constitutes a latent hazard, "neither obvious to nor anticipated by a skilled stevedore" [or experienced petroleum inspector] "in the competent performance of its work." *Howlett*, 512 U.S. at 105, 114 S.Ct. 2057. Plaintiff's attempt to invoke Defendant's duty to warn similarly falls short because the ship owner has no duty to warn of conditions that are apparent and obvious. As for the absence of clear markings on the hatch entrances, the pertinence of this is not clear from Plaintiff's testimony, nor is it clear to the Court from any other description of the accident provided by Plaintiff.

█ Plaintiff has presented no evidence that the Tanker's design was defective. If Plaintiff intends to assert that the high railings were part of a defective design, clear and specific allegations are necessary.[3] Moreover, these allegations would likely need to be supported with evidence from an expert in tanker design engineering. *See Vazquez–Filippetti v. Banco Popular de Puerto Rico*, 504 F.3d 43, 52 (1st Cir.2007) ("... expert testimony is necessary to define the standard of care whenever the design of the relevant prod-

uct is beyond the experience or knowledge of the average lay person.")

As is stated above, on a motion for summary judgment, once the defendant demonstrates that there is lack of evidence to support the plaintiff's claims, the plaintiff must come forward with "*specific facts demonstrating that there is genuine issue for trial.*" *Oliver v. Digital Equipment Corp.*, 846 F.2d at 105 (emphasis added). Instead, Plaintiff here has produced a muddle of confusing and poorly-substantiated allegations. Creating confusion about what actually caused Plaintiff's accident is not the same as demonstrating a genuine and unresolved question of material fact. This strategy will not allow Plaintiff to defeat Defendant's summary judgment motion. It appears that Plaintiff slipped, or tripped, on a wet metal deck—an unfortunate accident but one that cannot be attributed to Defendant's negligence. Certainly, Plaintiff has not advanced clear evidence to support an alternate theory.

### *Conclusion*

For the reasons stated above, the Court grants Defendant TMS Seacod GmbH & Company's motion for summary judgment on Count I of Plaintiff's Complaint, and judgment for that Defendant shall be entered forthwith. Count II of the Complaint against Defendant German Tanker Shipping, GmbH & Co., KG, was previously dismissed without prejudice by the parties. Judgment shall also be entered on Count III in favor of Defendant T/V Seacod.

It is so ordered.

---

**3.** The Court does not herein opine that a claim of defective design constitutes a claim of negligence under 33 U.S.C. § 905(b). *See Anastasiou v. M/T World Trust*, 338 F.Supp.2d 406, 418 (E.D.N.Y.2004) ("A claim for negli-

gent design is merely another way of alleging that the Vessel was unseaworthy, a cause of action that Plaintiff cannot assert because ... he is covered by the LHWCA.").