Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 13-1640

ZULAIKA RODRIGUEZ DELGADO,
T.I.O.R., a minor, and J.M.B., a minor,

Plaintiffs, Appellants,

v.

AERO INVESTMENT CORP.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Selya, Circuit Judge,
Souter,[*] Associate Justice,
and Lipez, Circuit Judge.

Álvaro R. Calderón Jr., Adriana G. Sánchez-Parés, Francisco J. Ortiz-García, and Álvaro R. Calderón Jr. LLP, for appellants.
Jaime F. Agrait Llado, Eric D. Griffin Jr., Agrait-Llado Law Firm, and Griffin Serrano, P.A., for appellees.

March 4, 2015

---

[*]     Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice.**  A small passenger plane flying from the Dominican Republic met with a violent storm and crashed into shallow seas off Puerto Rico, killing the pilot and all five passengers.  The appellants are the pilot's child, the child's mother, and another of her children, against whom the district court entered summary judgment in their diversity jurisdiction negligence action against Aero Investment Corporation, which had installed an allegedly defective magneto in the plane's engine and performed subsequent maintenance work on it.  Aero tested the engine's performance after the installation and at least two more times, with a possible third test said to have been done just before the fatal flight.  In ruling on Aero's motion for summary judgment under Federal Rule of Civil Procedure 56, the district court analyzed a number of contentious issues, in the course of which it accepted Aero's claim that appellants had not furnished evidence from which a trier of fact could find a causal connection between any fault on Aero's part and the crash of the plane.  We affirm on the same ground of lack of causation, albeit on a theory pressed in the district court and before us but upon which the district court did not rely in granting summary judgment.

We review summary judgment de novo, under the familiar standard that views the evidentiary record in the light most legitimately favorable to the party against whom judgment is sought, in determining whether there is no genuine dispute about

-2-

material facts entitling the moving party to judgment as a matter of law.  Genereux v. Raytheon Co., 754 F.3d 51, 54 (1st Cir. 2014). Despite myriad factual disagreements on subsidiary issues, the evidence bearing on the standard requirement of proving proximate cause between any negligence and injury, see P.R. Laws Ann. tit. 31, § 5141; Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007), may be described in the manner most favorable to the appellants fairly succinctly.

The plane was owned by a corporation not a party to this appeal.  Another third party reconditioned two engine magnetos, devices that produce the sparks that fire the plane's engines.  The left magneto suffered from defective internal wiring when inspected after the accident, thus carrying the potential to fire the engine erratically and weaken its power.  Aero installed the magnetos,[1] but there is no evidence that Aero or anyone else was aware of inadequate wiring in the magneto and no evidence that an

---

[1] It is unclear whether appellants press a negligence claim based on improper installation, as opposed to inadequate maintenance, of the faulty magneto.  In any event, summary judgment was appropriate on an installation theory.  Although appellants' expert witness, Colin Sommer, testified that the magneto was "improperly" installed, that otherwise unexplained conclusory statement is inadequate to raise a factual issue of negligent installation.  See Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008).  Moreover, although appellants' experts testified that if Aero had examined the left magneto on installation (presumably by disassembling it to some extent) it would have found the wiring defect, there was no testimony or other evidence showing an industry standard of reasonable care that required an installer like Aero to do a partial disassembly of the independent reconditioner's work before making the installation.  See id.

imperfection had manifested itself in any way in the course of periodic tests by Aero and some 250 hours of flying time between installation and the period immediately preceding the crash. Shortly before the plane went down, the pilot spoke by radio with a Puerto Rican traffic controller, but his stated reason was only to obtain permission to deviate from his original flight plan, to avoid severe weather ahead. After the pilot received authorization to do that, and the plane descended to a lower altitude, witnesses on the ground heard what they took to be irregular firing of the engine. Although the pilot made no further radio contact, the plane then flew into the storm itself, which was so violent that control was impossible. The crash in shallow water followed.

In the district court and before us, much effort was devoted to arguing whether there was a basis in evidence to claim (or dispute) that engine malfunction caused the pilot to allow the plane to veer suddenly into the destructive weather that he had obviously meant to avoid. But there is no need to resolve this issue, which is relevant only if appellants have evidence connecting the source of any engine malfunction with a negligent failure to discover it on Aero's part; and they have no such evidentiary basis in the record.

The nub of the negligence action against Aero is that its tests of the running engine were inadequate, and appellants make two such claims. The first of them, that Aero failed to perform a

necessary inspection just prior to the fatal flight, rests on expert witness, Luis Irizarry-Porrata, who testified that, after the crash was known, he saw an Aero employee making entries in the required record-keeping book to document the inspection claimed to have been made days before. Irizarry-Porrata took this to indicate that the inspection had never been completed. Although it is questionable whether this conclusion is adequately supported,[2] this issue, too, need not be resolved, owing to the insufficiency of the causation evidence made apparent in the course of presenting the second claim of testing inadequacy.

The second claim turns on a dispute over whether, in doing the testing, the Aero employees ran the engine at 1800 r.p.m. (the speed suggested by the plane's manufacturer) or at 2200 r.p.m. (as suggested by the engine's manufacturer). The expert witness Sommer understood the evidence to indicate 1800 r.p.m. had been used, at which speed he found it less "likely" that the defective magneto would produce the irregular ignition that would indicate a defect. But he also testified that sparking irregularity would be "intermittent at most" even at the higher speed and that Aero's employees could have run the engine at 2200 r.p.m. without producing any noticeable irregularity. All he could say was that an irregularity would be "more likely" to show up at the higher

---

[2] The evidence was that the book entries were pre-existing computer entries, then being printed out and posted in the book.

speed, but he offered no opinion on how likely it would show up at any speed. So far as the evidence shows, the likelihood of an irregular spark during a standard test duration might have been one in a hundred at 1800 r.p.m. and two in a hundred at 2200 r.p.m. The record provides no way to tell.

Thus, even if we assume for argument that Aero tested at 1800 r.p.m. or failed to complete a test or both, there is no evidence from which a trier of fact could conclude by a preponderance that a test viewed by the expert as adequate, complete, and consistent with due care at 2200 r.p.m. would have alerted Aero's people to a defect and led them to refuse to approve the plane's operation. Consequently, even if we assume that Aero failed to exercise due care, there is no evidence that due care would, to a degree of preponderance, have avoided the result.

We think Aero's counsel is correct to argue that this absence of causal evidence places this case in the same posture as the one described by the Supreme Court in Celotex Corp. v. Catrett:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

477 U.S. 317, 322-23 (1986) (internal quotation marks omitted).

The order of summary judgment is affirmed.