# United States Court of Appeals
## For the First Circuit

No. 18-1266

YEITZA MARIE APONTE-BERMUDEZ,

Plaintiff, Appellant,

v.

ELIGIO COLON ET AL.,

Defendants, Appellees,

ANGEL NOLBERTO ROBLES ET AL.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille L. Velez-Rive, U.S. Magistrate Judge]

Before

Lynch, Boudin, Kayatta,
Circuit Judges.

David Efron, Alberto J. Pérez Hernández, Etienne Totti del Toro, and Law Offices of David Efron, P.C. on brief for appellant. Jorge Carazo-Quetglas and Carazo Quetglas Law Offices on brief for appellees.

December 20, 2019

**BOUDIN, Circuit Judge.** On December 30, 2012, Gabriel Medina Ortíz ("Medina") drove his car into a vehicle parked outside a building owned by Eligio Colón. The impact caused the parked vehicle to crash into the building's open terrace, injuring several individuals sitting within the terrace, including Yeitza Aponte-Bermúdez ("Aponte"). Aponte sued Medina, Colón, and others, thereafter settling her claims with all defendants, except for Colón, his heirs, and his insurer.[1]

At trial, two expert witnesses testified and submitted reports for Aponte. After Aponte's case-in-chief, the district court granted judgment, Fed. R. Civ. P. 50, for the defense, finding that Aponte failed to establish the applicable standard of care, a breach of duty, and that the accident was foreseeable to the defendants. Aponte now appeals.

Because this is a diversity case controlled by Puerto Rico law, see Rodríguez-Tirado v. Speedy Bail Bonds, 891 F.3d 38, 41 (1st Cir. 2018), Aponte had to show "damage . . . through fault or negligence" of the defendant, P.R. Laws Ann. tit. 31, § 5141. Where, as here, Aponte claimed defective or negligent design, this circuit ruled in Vázquez-Filippetti v. Banco Popular de Puerto Rico that under Puerto Rico law, Aponte would ordinarily have to prove the applicable standard of care through expert witnesses.

---

[1] Colón died prior to trial, and Aponte substituted Colón's heirs as defendants. See Fed. R. Civ. P. 25(a).

- 2 -

504 F.3d 43, 51-52 (1st Cir. 2007).  What is a reasonably safe design, the court said, is ordinarily "beyond the experience or knowledge of an average lay person."  Id. at 52.

The rule ascribed to Puerto Rico has the ring and balance of a settled rule, and Vázquez-Filippetti presents it in these terms.  What is "ordinarily" true is not invariably true: some negligence in design may be blatant enough not to require expert testimony just as an ordinary negligence case might occasionally call for more than lay testimony.  But no such exception is claimed to apply to the negligent design claim in this case nor would there be any sound basis for such an exception in this instance.  And while standard tort treatises do not seem commonly to identify the expert witness requirement, Vázquez-Filippetti cites some authority for the rule in Puerto Rico, id. at 50-53, and Aponte agrees that Vázquez-Filippetti governs this case.  As she also has not cited us to any Puerto Rico case contrary to Vázquez-Filippetti, Vázquez-Filippetti is binding in this circuit.

At trial, Aponte argued that the defendants' terrace was negligently designed in two respects: first, that the terrace was built too closely to the road to ensure the safety of customers inside and, second, that the structure was not capable of withstanding vehicular impacts.  But her experts at trial did not present to the jury or otherwise point elsewhere in the record to any evidence showing "what the customary or usual standard of care

[is] for traffic or structural engineers designing" roadside structures. Id. at 54.

Carlos Vera-Muñoz ("Vera"), qualified as an expert witness in engineering and project management, testified that "[the] structure was constructed illegally without permits and it was constructed inside the right of way of the road." Yet Vera identified no such required permits nor the statute or regulation that makes illegal the construction of the terrace within an existing right of way.

Vera reported that a Highway and Transportation Authority ("HTA") guide sets eighteen meters (nine meters from the road's center in each direction) as the typical cross-section for roads like PR-152, the road on which the accident occurred. Vera also testified that a planning regulation, Planning Regulation #4, prohibits construction within a government-owned roadside right of way without the government's permission. In fact, one corner of the terrace was fewer than nine meters from the road's center.

On cross examination, Vera acknowledged that the HTA guide and Planning Regulation #4 were distinct regulations. Planning Regulation #4, at least as presented in Vera's report and testimony, does not refer to the HTA guide. Planning Regulation #4, provides, in pertinent part:

> No construction of any building within the proposed right of way will be authorized (Article 21, Act No. 76, enacted on June 24,

> 1975, as amended), unless the owner of the possession or property promises, to remove the structures and development works, at its own account and risk . . . . The occupation or use of lawfully existing buildings or structures . . . is permitted, until the government may have a need to acquire the property by any lawful means.

Planning Regulation #4 does not create rights of way; it simply prohibits construction, unless the owner bears the risk of removal, in the rights of way that the 1975 act references.[2] Nor does the HTA establish rights of way or prohibit roadside construction.

As to the terrace's construction, Ivan Baigés-Valentín ("Baigés-Valentín"), an expert in mechanical engineering and accident reconstruction, reported that the terrace was "not capable of resisting impacts from vehicle accidents" or "safely protecting its customers from the impact of a vehicular collision." Yet Baigés-Valentín did not provide any industry standards establishing a standard of care regarding the construction of roadside structures.

**Affirmed.**

---

[2] Nor does the 1975 act create rights of ways. The act only prohibits the Regulations and Permits Administration from authorizing construction on rights of way that appear on an official map or that the Department of Transportation and Public Works is in the process of constructing. See P.R. Act No. 76 of June 24, 1975, at 231-32.